No. 70,154

STATE OF KANSAS, *Appellant*, v. RANDOLPH SCOTT GILBERT,
*Appellee*.
(886 P.2d 365)

Review of the judgment of the Court of Appeals in an unpublished decision
filed May 13, 1994.

Opinion filed December 9, 1994.

*Joe Shepack*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellant.

*Jerry E. Driscoll*, of Driscoll & Driscoll, of Russell, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an interlocutory appeal pursuant to
K.S.A. 1993 Supp. 22-3603. Several issues were presented to the

Court of Appeals. The only issue before us on the State's petition for review is the propriety of the Court of Appeal's affirmance of the district court's suppression of evidence seized in the execution of a search warrant. Said opinion is unpublished and was filed on May 13, 1994.

The State contends:

1. The district court and the Court of Appeals utilized the wrong standard of review relative to the issuance of the search warrant;

2. under the proper standard of review, there was a substantial basis for the magistrate's determination that probable cause existed for the issuance of the warrant; and

3. alternatively, if the requisite probable cause was lacking, the evidence should not be suppressed, based upon the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984), and discussed in *State v. Doile*, 244 Kan. 493, 769 P.2d 666 (1989).

It would appear that the State is correct in its contention that the Court of Appeals utilized an incorrect standard of review. The Court of Appeals stated:

"In reviewing a trial court's decision to suppress evidence, this court is limited to determining whether the trial court's decision was supported by substantial evidence: 'If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence, this court on review will not substitute its view of the evidence for that of the trial court.' *State v. Doile*, 244 Kan. 493, Syl. ¶ 1, 769 P.2d 666 (1989)."

Later in the opinion, the Court of Appeals stated:

"The trial court found that the informant's statements, without corroboration, were not sufficient to provide probable cause to support a search warrant. This was a negative finding and, absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice, the trial court's findings cannot be disturbed. *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).

"We find no arbitrary disregard of undisputed evidence, nor do we find any indication of bias, passion, or prejudice; therefore, the trial court's decision cannot be reversed on that basis."

The quoted statement from *Doile* was misapplied herein. In *Doile* there were two searches—a warrantless search of defen-

dant's automobile and a later search of defendant's residence under the auspices of a search warrant. The quote from *Doile* referred to the district court's decision on the warrantless search and was appropriate to that situation. The circumstances of the search and the propriety of the police officer's actions were being judicially determined for the first time. The Court of Appeals' statement relative to the standard of review of negative findings is a correct statement of law when the district court's findings are before a reviewing court. Where the district court, itself, is reviewing the propriety of the issuance of a search warrant by a magistrate, the district court and any other subsequent reviewing court assume a different role. The determination is made by examining the warrant and its supporting affidavit to determine if the issuing magistrate had a substantial basis for concluding that probable cause existed. As was held in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), and followed in *State v. Abu-Isba*, 235 Kan. 851, 685 P.2d 856 (1984):

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.*" 462 U.S. at 238-39. (Emphasis supplied.)

See *Gates* also for the following:

"[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [*Spinelli v. United States*, 393 U.S. 410, 419, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).] 'A grudging or negative attitude by reviewing courts toward warrants,' [*United States v. Ventresca*, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965),] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' [*Ventresca*, 380 U.S. at 109.]" 462 U.S. at 236.

The record supports the State's claim that the district court made a de novo review of the sufficiency of the affidavit. The Court of Appeals, as previously noted, by using the wrong standard of review, erroneously locked in on the district court's de-

termination, when in fact it should have been reviewing the matter to determine whether the issuing magistrate had a substantial basis for concluding probable cause existed. In such a review, what the district court found or did not find should not be the basis for the Court of Appeals' review.

We will now turn to the question of whether the magistrate had a substantial basis for concluding that probable cause existed and, in so doing, will pay "great deference" to the magistrate's determination.

The affidavit filed herein is as follows:

"AFFIDAVIT

"STATE OF KANSAS, ELLSWORTH COUNTY, ss:

"COMES NOW William R. Halvorsen, of lawful age, after being first duly sworn, on his oath states that:

"1. Affiant is a Special Agent with the Kansas Bureau of Investigation (KBI) and is currently assigned to the undercover narcotics section of the bureau. Affiant has been an agent with the KBI since July, 1990 and has been assigned to the narcotics division during the entire period since July, 1990. Affiant is a graduate of the KBI Special Agent Criminal Investigation School and the Drug Enforcement Administration's (DEA) Basic Narcotics and Dangerous Drug Enforcement School. Prior to becoming an agent with the KBI, affiant practiced law for approximately 7½ years, approximately 5½ of which affiant was a county attorney.

"2. Affiant assisted other officers in an undercover narcotics investigation ongoing in Russell County, Kansas on this date. The following is a summary of a portion of that investigation:

"The Russell County Drug Task Force has had an ongoing narcotics investigation active for approximately four months according to Russell County Undersheriff Tim Holmes. As part of this investigation, Russell County used a confidential informant (Matt Picking) who, over the last week, made two buys prior to this date of methamphetamine from Chester R. Patrick. These buys were of a covert nature and were under the supervision of the Russell County Drug Task Force.

"On this date, at approximately 4:30 p.m., Matt Picking contacted Chester Patrick in Russell for the purpose of arranging another covert purchase of narcotics. These parties negotiated a transaction, the terms of which called for Picking to pay $2,000.00 for 1 ounce of Methamphetamine to be delivered by Patrick. The terms further specified that the money would change hands only upon delivery of the product. Patrick stated that he would have to go to Wilson, Kansas, to pick it up and that he would meet Picking in Dorrance, Kansas, at 5:30 p.m. this date to deliver the product to Picking and to receive the $2,000.00.

"Officers observed Patrick leave the location in Russell in a white in color GMC pickup and at approximately 5:15 p.m., officers observed the same pickup parked in front of a white frame residence located immediately west of the Catholic Church in Wilson, Ellsworth County, Kansas, being the 4th house west of the church on the north side of 29th street, being further described and identified as the first house east of a residence located in the northeast corner of the 1st intersection of two streets west of the Catholic Church in Wilson, Kansas.

"At approximately 5:35 p.m., officers observed the pickup pull away from the residence and go directly to Dorrance, Kansas, at which time Patrick met with Picking and KBI special agent Matthew Lyon at the location agreed to at the 4:30 p.m. meeting. Patrick told the two men that he had the stuff and wanted his money. At that time, Agent Lyon, Sheriff Balloun and Undersheriff Holmes arrested Patrick. Incident to the arrest, officers recovered a light colored powdered material weighing approximately 1.05 ounces which tested positive for methamphetamine by way of a standard field test kit used routinely by the KBI.

"After having his rights pursuant to *Miranda* explained to him, Patrick waived his rights and spoke to officers. During this interview, Patrick told the officers that he obtained the narcotics from Randy Gilbert and that Gilbert resides at the residence described above (this was further confirmed by Wilson Police Chief Tim Heard). Patrick said that he used to live with Gilbert but moved away about 2 months ago. Since then, Patrick said that he had purchased meth from Gilbert at the residence approximately 10 times. Gilbert usually holds the meth in the residence and based upon the relationship that Patrick has with Gilbert, Patrick believes that Gilbert is holding meth at the residence at this time. Patrick stated further that the other sales he made to Picking of meth also came from Gilbert's residence, and that Gilbert always had the product immediately available in the residence.

"3. Affiant has either personal knowledge of the above or received the information first hand from either Undersheriff Holmes, Agent Lyon or Police Chief Heard. Affiant also states that this Affidavit is not intended to be a complete report, but is intended only as a summary to show probable cause for the issuance of a Search Warrant.

"FURTHER AFFIANT SAIETH [*sic*] NAUGHT.

/s/ William R. Halvorsen

William R. Halvorsen

"SUBSCRIBED AND SWORN To before me this 22nd day of June, 1992.

/s/ Dale L. Urbanek

Judge of the District Court"

In *State v. Abu-Isba*, 235 Kan. 851, we adopted the "totality of the circumstances" approach set forth in *Illinois v. Gates*, 462

U.S. 213, relative to the issuance of search warrants, wherein we held:

"Before a warrant for arrest or search may be issued, there must be a finding of probable cause by a neutral and detached magistrate. The complaint and supporting affidavits should supply the magistrate with sufficient factual information to support an independent judgment that probable cause to arrest exists." Syl. ¶ 1.

"In determining whether to issue a warrant for arrest or search, a magistrate should consider the 'totality of the circumstances' presented and make a practical, common-sense decision whether there is a fair probability that a crime has been committed and the defendant committed the crime, or that contraband or evidence of a crime will be found in a particular place." Syl. ¶ 2.

"On appeal, the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Syl. ¶ 3.

As previously noted, *Illinois v. Gates* further requires interpretation of the affidavit be in a "common-sense manner."

We conclude that the magistrate had a substantial basis for concluding that probable cause existed. The search warrant was sought on June 22, 1992. In the week prior thereto, officers had used a confidential informant to make two supervised buys of methamphetamine from Chester Patrick. At 4:30 p.m. on the day in question, the informant made a request to Patrick for a third purchase. The sale was arranged, with Patrick stating he had to drive to Wilson from Russell to get the drug and would meet the confidential informant in Dorrance at 5:30. Patrick was observed driving out of Russell. His pickup truck was observed in front of a residence in Wilson. Officers observed Patrick driving to Dorrance where he concluded the sale with the confidential informant and an undercover officer. Patrick was then arrested. He stated he had purchased the methamphetamine from defendant at defendant's Wilson residence. Independent verification was made that Gilbert resided there. Patrick stated that he had made a total of 10 methamphetamine purchases from defendant at his residence, including the methamphetamine for the two other supervised buys by the confidential informant. Patrick then stated he had purchased methamphetamine from defendant's Wilson residence that day and on at least two other occasions that week.

This was partially corroborated by what the officers conducting the covert operation had observed. Patrick stated that he believed additional methamphetamine remained in the Wilson residence. Under the totality of the circumstances test, there was a substantial basis for the magistrate's determination of probable cause.

By virtue of this determination, we need not determine the State's alternative issue of whether the good faith exception under *United States v. Leon*, 468 U.S. 897, should be applied. We should, perhaps, note that Judge Rulon dissented from that portion of the Court of Appeals opinion which held the good faith exception inapplicable.

The judgment of the Court of Appeals affirming the district court in suppressing the evidence seized in the execution of the search warrant is reversed. The district court is reversed, and the case is remanded to the district court for further proceedings.