(987 P.2d 1119)
No. 78,380

STATE OF KANSAS, *Appellee,* v. STEPHEN MEDFORD SHIVELY, *Appellant.*

Opinion filed July 23, 1999.

*Lisa Nathanson* and *Michael J. Helvey*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Joel W. Meinecke* and *James A. Brown*, assistant district attorneys, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., ROYSE and GREEN, JJ.

GERNON, J.: Stephen Medford Shively appeals his convictions on multiple drug counts and one count of aggravated assault, raising several issues, including the violation of his Fourth and Fifth Amendment rights.

Shively shot and killed Officer Tony Patterson, a member of the Topeka Police Department Street Crime Action Team, during a drug raid at his home. The officers executing the drug raid woke

Shively while breaking down Shively's door at 3 o'clock in the morning. Shively asserted the affirmative defense of defense of dwelling and was acquitted of all charges related to the shooting. Shively, however, was convicted of possession with intent to sell, sale of marijuana, distribution of marijuana, conspiracy to distribute hallucinogenic drugs, failure to have a drug stamp, possession of drug paraphernalia, and aggravated assault. He appeals these convictions.

## Suppression of Evidence

Shively claims the trial court erred in denying his motion to suppress the drug evidence obtained from the search of his residence.

When reviewing the trial court's decision which suppressed evidence seized under a search warrant, great deference is given to the trial court's findings of facts. The ultimate determination of whether the warrant was issued for probable cause, however, is a question of law subject to de novo review. See *State v. Longbine*, 257 Kan. 713, 717, 896 P.2d 367 (1995).

Shively asserts two arguments to question the constitutionality of the search warrants. First, Shively argues that the initial affidavit, which was incorporated by reference into subsequent search warrants for Shively's residence, is invalid. Second, Shively argues that the first warrant was unconstitutionally executed.

The affidavit supporting a search of Shively's residence was based on information received from a confidential informant (CI). To bolster the credibility of the CI, the affidavit states that the police had been working with the CI for less than 1 month and that the CI had no convictions for dishonesty. According to the affidavit, the CI advised police of marijuana sales at Shively's home and claimed to have witnessed sales by Shively on four occasions. The CI identified Shively through a 1985 mug shot resulting from Shively's previous arrest for possession of marijuana and drug paraphernalia. Finally, the affidavit states that the CI had observed marijuana inside Shively's apartment within the preceding 48 hours.

In addition to the information provided by the CI, the affidavit included a description of a controlled purchase in which a CI used police funds to purchase drugs while under police surveillance. The affidavit, however, does not state that the CI made a controlled purchase.

Based on the affidavit, a judge issued a search warrant at 2:25 a.m. on October 12, 1995. The district court upheld the search warrant but made no findings regarding the validity of the affidavit. The trial court merely stated that the "initial search warrant and affidavit attended thereto were . . . proper in form and in substance, and that . . . there was probable cause existent to issue the warrant."

This court must determine whether the magistrate had a substantial basis for issuing the search warrant by determining whether probable cause existed under the totality of the circumstances. See *State v. Gilbert*, 256 Kan. 419, 422, 886 P.2d 365 (1994); *State v. Ratzlaff*, 255 Kan. 738, 743, 877 P.2d 397 (1994). In making that determination, great deference is given to the magistrate's determination. *Gilbert*, 256 Kan. at 422.

A magistrate is required to assess all of the circumstances presented and make a practical, common-sense decision about whether a crime has been committed or is in the process of being committed and whether there is a fair likelihood that the evidence will be found in the place specified. *Gilbert* at 256 Kan. at 421.

When an affidavit is founded upon information from an unidentified informant, its validity is not controlled by the reliability of the unidentified informant. *State v. Sidel*, 16 Kan. App. 2d 686, 692, 827 P.2d 1215, *rev. denied* 250 Kan. 807 (1992). The probable cause determination, however, must be supported by some indication that the informant's information is accurate. *Sidel*, 16 Kan. App. 2d at 692. Therefore, the veracity and basis of knowledge of the CI must be considered as part of the substantial basis for finding probable cause in this case. See *Ratzlaff*, 255 Kan. at 743.

Shively argues that the affidavit's statements regarding the CI do not establish any indication of the CI's veracity or basis of knowledge. In support of this argument, Shively points to the officer's statement in the affidavit that the CI had no convictions for dis-

honesty. Shively claims the officer misrepresented the information to the magistrate. Because Shively did not offer proof under oath challenging the honesty of the information in the search warrant affidavit and requesting a *Franks* hearing, he cannot challenge the honesty of the statements as presented to the magistrate. See *State v. Jensen*, 259 Kan. 781, 787, 915 P.2d 109, *cert. denied* 136 L. Ed. 2d 250 (1996).

Here, the CI's veracity is established by two methods. The first method is the affiant's direct statement that the CI had no convictions for dishonesty. The second method is based on the ambiguous controlled purchase paragraph found in the affidavit. Although not specifically stated, it is reasonable to infer that the general paragraph about controlled purchases was included because one had been completed in the course of the investigation. The mere nature of a controlled purchase provides an adequate basis for believing the CI's claims about drug sales at Shively's apartment.

The affidavit indicates that the CI witnessed marijuana sales at Shively's apartment and had recently seen a significant quantity of marijuana there as well. This information demonstrates that the CI based his knowledge of the illegal events on first-hand perception.

Giving proper deference to the magistrate's decision, this court finds that the affidavit adequately established the CI's veracity and basis of knowledge. Considering the totality of the circumstances presented to the magistrate, the affidavit, on its face, supports a finding of probable cause.

If officers seize evidence reasonably relying on a search warrant, the good faith exception bars application of the exclusionary rule. The good faith exception does not apply, however, when the officers seeking the search warrant deliberately misled the magistrate. *Longbine*, 257 Kan. at 720. In this case, we are required to conclude that the record clearly shows several instances where the officers deliberately misled the magistrate.

The first instance involved the statement regarding the CI's convictions for dishonesty. The CI testified that he did not inform the officers of his criminal history. The requesting officer testified that he did not conduct any independent background investigation of

the CI. Consequently, the officers did not actually know the truth of this statement when it was presented to the magistrate.

Another instance relates to the claim that the CI had witnessed Shively selling drugs on four occasions. The CI testified that he did not tell the officers that he had ever seen Shively sell drugs, only that the sales occurred at Shively's apartment. The statement in the affidavit clearly misrepresents the information provided by the CI.

A third instance pertains to the officer's claim that he had been working with the CI for less than 1 month. In fact, the relationship with this informant was limited to little more than 24 hours. Although literally true, the officer's statement mischaracterizes his relationship with the CI. This court rejected the "literally true," but "misleading" approach in *State v. Olson*, 11 Kan. App. 2d 485, 490, 726 P.2d 1347, *rev. denied* 240 Kan. 805 (1986). This statement also demonstrates the officers' deliberate attempt to mislead the magistrate.

Based on these deliberate misrepresentations, the good faith exception to the exclusionary rule would not apply.

In addition to challenging the validity of the affidavit, Shively argues that the initial search violated his Fourth Amendment right against unreasonable search and seizure. Shively claims that the night-time execution of the warrant and the officers' failure to knock and announce their presence were unreasonable.

First, Shively complains of the night-time execution of the warrant. K.S.A. 22-2510 permits the execution of a search warrant at any time of any day or night. Relying on the common-law tradition against night-time searches, Shively asserts that K.S.A. 22-2510 is unconstitutional because it authorizes a blanket exception to reasonable searches. In our view, this argument takes K.S.A. 22-2510 out of its legislative context. This statute does not attempt to limit any reasonableness analysis required under Section 15 of the Kansas Constitution Bill of Rights or the Fourth Amendment to the U.S. Constitution. K.S.A. 22-2510 is merely permissive, giving legislative approval for executing search warrants at any time in accordance with law enforcement needs and constitutional con-

straints. Consequently, K.S.A. 22-2510 is not a blanket exception to a reasonableness determination and is not unconstitutional.

Next, Shively claims that the officers' failure to knock and announce their presence was unreasonable. In support, Shively cites *Wilson v. Arkansas*, 514 U.S. 927, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995). In *Wilson*, the United States Supreme Court held that the reasonableness determination under the Fourth Amendment requires consideration of whether the officers knock and announce their presence and authority before entering. 514 U.S. at 934. Kansas has not specifically addressed this question.

Kansas has not adopted a knock and announce rule for executing search warrants. *State v. Tyler*, 251 Kan. 616, 634, 840 P.2d 413 (1992). The State suggests that *Wilson* merely provides guidance but does not expand or delimit current Kansas law. The State's suggestion ignores the precedential effect of United States Supreme Court decisions dealing with constitutional rights. U.S. Const. Art. IV. State courts are required to follow Supreme Court decisions affecting constitutional rights regardless of whether prior state court decisions are consistent with those decisions. *Trinkle v. Hand*, 184 Kan. 577, 579, 337 P.2d 665, *cert. denied* 361 U.S. 846 (1959). Clearly, the *Wilson* decision applies in Kansas.

Although the *Wilson* decision requires consideration of whether officers knock and announce, it does not establish a rigid rule of announcement. *Wilson*, 514 U.S. at 934. On the contrary, the *Wilson* Court acknowledged the need to balance law enforcement interests with the flexible requirement of reasonable searches and refused to dictate how search warrants must be executed. *Wilson*, 514 U.S. at 934. The *Wilson* Court stated that lower courts should determine the circumstances warranting a no-knock entry. *Wilson*, 514 U.S. at 936.

The *Wilson* decision was further explained by *Richards v. Wisconsin*, 520 U.S. 385, 396, 137 L. Ed. 2d 615, 117 S. Ct. 1416 (1997), which held that the Fourth Amendment does not permit blanket exceptions to the knock and announce requirement for felony drug investigations. The Tenth Circuit has also addressed the *Wilson* decision, holding that officers are excused from the knock and announce rule when justified by exigent circumstances.

*U.S. v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996). This exception, however, only applies when officers hold an objectively reasonable belief that an emergency situation exists. *Moore*, 91 F.3d at 98. The *Moore* court further limited emergency situations regarding weapons to those in which the government can articulate how the presence of weapons affected the officers' safety. *Moore*, 91 F.3d at 98-99.

The State argues that the officers' no-knock entry was justified because of the threat of weapons and the possible destruction of evidence. *Wilson* acknowledged both of these as appropriate reasons for no-knock entries. 514 U.S. at 936. However, further analysis into the specific circumstances of Shively's raid is required before determining whether it met reasonableness requirements. Although *Wilson* and its progeny have not been discussed in Kansas state courts, federal case law requires an evaluation of the circumstances surrounding the no-knock execution of the search warrant at Shively's apartment. The same analysis applies to Kansas state courts.

The record does not support the State's position that exigent circumstances required the no-knock entry. First, the raid team's supervising officer testified that all of the search warrants executed by his officers were conducted in a no-knock manner. This indicates that as a matter of course, exigent circumstances were not considered by the officers before determining the necessity of a no-knock entry. In addition, an officer on the raid team testified that the destruction of evidence was not discussed during the raid planning and that the CI advised officers that there were no weapons present. Finally, one of the raid team leaders testified that they expected to find Shively asleep. Based on this testimony, the State cannot establish that the officers considered the possibility of exigent circumstances until after the fact.

Consequently, we conclude that the initial search warrant was unconstitutionally executed. Regrettably, the loss of an officer's life might have been prevented if the affidavit had been candid and not designed to mislead the magistrate into issuing the search warrant.

The rule in Kansas, plainly stated in the *Wilson* decision, is that absent exigent circumstances, no-knock search warrant executions will result in suppression of the evidence.

Here, however, we conclude that the impropriety and unconstitutionality of the execution does not require suppression of any evidence. After Officer Patterson was shot, the remaining officers arrested Shively and searched his apartment for other occupants to avoid further violence. The search following Shively's arrest did not extend to the items listed in the search warrant. One raid team member testified that no physical evidence was seized as a result of the initial search warrant. Instead, police sought and obtained a subsequent search warrant based, in part, on the initial affidavit. Police executed the second warrant at Shively's apartment later the same day. The second warrant had a sufficient basis in truth and was constitutionally sufficient. As a result, there was no tainted evidence seized under the initial search warrant.

The fruit of the poisonous tree doctrine does not apply to require suppression of evidence under the subsequent warrants. This doctrine is invoked when officers rely on information received during unlawful police conduct to access additional information. *State v. Daly*, 14 Kan. App. 2d 310, 315, 789 P.2d 1203, *rev. denied* 246 Kan. 769 (1990). Here, the police incorporated the initial affidavit into the subsequent search warrant affidavits and did not rely on any additional information received during the raid to establish probable cause regarding Shively's drug activity.

The trial court did not err in denying Shively's motion to suppress.

## Privilege Against Self-Incrimination

Shively contends that his Fifth Amendment privilege against self-incrimination was violated when the trial court ordered him to testify.

The error complained of affects Shively's constitutional rights. Therefore, it cannot be considered harmless unless an appellate court declares that it was harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt when the error had

little, if any, likelihood of having changed the result of the trial. See *State v. Smallwood*, 264 Kan. 69, 81, 955 P.2d 1209 (1998).

Shively raises two arguments in support of this issue. First, Shively claims error in the trial court's refusal to sever the drug charges from the person felony charges. Second, Shively asserts that the trial court erroneously forced him to testify under cross-examination to questions outside the scope of his limited direct testimony. Both of these arguments must be evaluated under their applicable standards of review, and the resulting determination must be evaluated for harmless error.

The standard of review for severing charges is abuse of discretion. *State v. Anthony*, 257 Kan. 1003, 1016, 898 P.2d 1109 (1995). K.S.A. 22-3202(1) permits the joinder of charges in the same complaint or information if the crimes charged are acts or transactions that are related. In this case, the judge denied Shively's motion to sever the drug charges based on the State's refusal to consent. The court did not state any other reasons for denying the motion.

Our task is to determine whether the trial court abused its discretion. Judicial discretion is abused only when it plainly exceeds the bounds of reason and justice. *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997). The record reflects that the officers' presence at Shively's apartment to execute a warrant was related to the previous drug activity at that location. This connection logically links the drug charges and the person felony charges, allowing joinder under K.S.A. 22-3202(1). Although others may differ regarding the connection, it is not so tenuous as to warrant reversal for abuse of discretion. Indeed, if reasonable persons could differ as to the propriety of the action, then the trial court has not abused its discretion. See *Stallings*, 262 Kan. at 726.

The trial court's decision is also supported by previous Kansas law demonstrating the minimal requirements for meeting the connection element of K.S.A. 22-3202(1). In *State v. Anthony*, 257 Kan. at 1016-17, the Kansas Supreme Court allowed the joinder of murder charges and drug charges because the defendant was overheard discussing the murder while under police surveillance for drugs. Clearly the connection between the murder charges and the drug charges were more tenuous in *Anthony* than those in this

case. Based on the minimal connection established by *Anthony*, we conclude that the district court did not abuse its discretion in this case.

Next, Shively argues that the trial court forced him to testify beyond the scope of his direct testimony in violation of his Fifth Amendment privilege against self-incrimination. The trial court's decision about the scope of cross-examination is also reviewed under the abuse of discretion standard. See *State v. Vargas*, 260 Kan. 791, 798, 926 P.2d 223 (1996).

Shively offered direct testimony about the events pertaining to the search warrant execution and the shooting of Officer Patterson. The trial court ruled that cross-examination could cover the drug-related events that occurred just prior to the search warrant raid because they were pertinent to Shively's state of mind. The court, however, specifically denied the State's proposed cross-examination into Shively's involvement with Chris Donnelly, a co-actor in the marijuana sales at Shively's apartment; the acquisition of the marijuana expected to be seized in the raid; the packaging, sale, distribution, and proceeds from previous drug transactions; and the presence of cash in Shively's apartment.

To abuse its discretion, the trial court must have acted arbitrarily, fancifully, or unreasonably in making its decision. In other words, a trial court abuses its discretion when no other reasonable person would take the same view. *Stallings*, 262 Kan. at 726. In this case, other reasonable persons could reach the decision that the activities immediately prior to the raid affected Shively's state of mind. Consequently, the trial court did not abuse its discretion in allowing the scope of cross-examination to cover the time period immediately before the raid.

Independent analysis of each of Shively's individual arguments does not warrant reversal. However, the harmless error standard must also be applied to resolve the constitutional impact of Shively's arguments. When constitutional rights are invoked, this court must determine beyond a reasonable doubt whether the error would have affected the outcome of the trial. *Smallwood*, 264 Kan. at 81. Nonetheless, consideration of these arguments under the harmless error standard does not warrant reversal.

During the course of Shively's cross-examination, he incriminated himself by admitting to the use of a "bong" for smoking marijuana, admitting the possession of marijuana valued at hundreds of dollars, and admitting that marijuana was sold in his apartment just before the raid. Shively's incriminating testimony, however, is not the only evidence supporting the relevant charges. The State produced physical evidence and eyewitnesses' testimony that also incriminated Shively. We conclude that the verdict here, given our reading of the total record, was not affected by Shively's testimony.

## Sufficiency of the Evidence

When the sufficiency of the evidence is challenged, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Claiborne*, 262 Kan. 416, 425, 940 P.2d 27 (1997).

Shively claims that the evidence was insufficient to demonstrate his intent to place another person in reasonable apprehension of immediate bodily harm as required for aggravated assault. See K.S.A. 21-3408, K.S.A. 21-3410. This argument overlooks Shively's testimony. Shively testified that he intended to scare or injure the intruders on the other side of his door. This testimony alone is sufficient to establish the intent element of aggravated assault. Viewing this evidence favorably to the prosecution clearly demonstrates that a rational factfinder could have found Shively guilty of aggravated assault beyond a reasonable doubt.

## Jury Instructions

Next, Shively claims that the trial court erred by not instructing the jury that the affirmative defense of defense of dwelling applies to aggravated assault, a lesser included crime of aggravated assault on a law enforcement officer. The instruction given stated as follows:

"Mr. Shively has raised Use of Force in Defense of Dwelling as a defense. Unless the government disproves this defense beyond a reasonable doubt, you

must find Mr. Shively not guilty of Murder in the Second Degree and Aggravated Assault on a Law Enforcement Officer."

A party cannot claim error for an instruction if it failed to object, stating with specificity the grounds for the objection, before the jury retires to consider the verdict. *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997). Shively failed to object to the instruction. As a matter of fact, the instruction given was exactly as Shively requested. Therefore, this contention by Shively is wholly without merit.

### Sentencing Requirements

Lastly, Shively claims the trial court failed to comply with the sentencing requirements of K.S.A. 21-4607.

K.S.A. 21-4607(2) limits the imposition of fines on individuals sentenced to imprisonment to circumstances in which the defendant derived pecuniary gain from the illegal activity or situations where the court believes that the imposition of fines is adapted to deterrence of the crime or the correction of the offender. In determining the amount of the fine, the court must consider the financial resources of the defendant and the burden its payment will impose. K.S.A. 21-4607(3). The sentencing court is required to make findings under K.S.A. 21-4607(2) and (3). *State v. Mc-Glothlin*, 242 Kan. 437, 441, 747 P.2d 1335 (1988).

Here, the court found that Shively "derived a substantial amount of money or asset ownership from the illegal drug sale activity." The judge made no other findings regarding the imposition of the fines. The findings made by the judge are supported by the evidence, but they only address one prong of the statutory criteria for imposing fines. The court was also required to make findings about Shively's financial resources and the burden such fines would impose on him.

In *State v. McNett*, 15 Kan. App. 2d 291, 292, 807 P.2d 171 (1991), this court had vacated the fines imposed and remanded the case for redetermination of the fines because the court failed to make adequate findings in accordance with K.S.A. 21-4607(2) and (3). This case presents a similar situation, requiring the imposition

of fines to be vacated and remanding for redetermination under K.S.A. 21-4607.

Accordingly, Shively's convictions are affirmed, but the issue of fines is remanded for findings as required in K.S.A. 21-4607.