No. 78,380

STATE OF KANSAS, *Appellee,* v. STEPHEN MEDFORD SHIVELY
*Appellant.*
(999 P.2d 259)

Opinion filed March 10, 2000.

*Craig H. Durham,* assistant appellate defender, argued the cause, and *Michael J. Helvey,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, were with him on the briefs for appellant.

*Tony W. Rues,* assistant district attorney, argued the cause, and *Joel W. Meinecke* and *James A. Brown,* assistant district attorneys, *Joan M. Hamilton,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LARSON, J.: Stephen Medford Shively appealed his convictions of aggravated assault and five drug charges (possession with intent to sell an hallucinogenic drug, sale of marijuana, conspiracy to distribute a hallucinogenic drug, possession of drug paraphernalia, and failure to pay drug tax.) The Court of Appeals affirmed all of Shively's convictions. We granted Shively's petition for review on the "single issue of no-knock search warrants."

Factual and procedural background

We limited the scope of review granted in this case as is allowed pursuant to Rule 8.03(g)(1) (1999 Kan. Ct. R. Annot. 53). We consider only that portion of the Court of Appeals' decision in *State v. Shively,* 26 Kan. App. 2d 302, 987 P.2d 1119 (1999), encompassed by the limited issue on review. Specifically, we consider the Court of Appeals' holding that the Topeka Police Department Street Crime Action Team (SCAT) unconstitutionally executed a middle-of-the-night search warrant on Shively's residence but that the drug evidence seized at a later time as the result of the lawful execution of a later search warrant was properly admitted.

The facts leading to the tragic result in this case are in great dispute only as to what was said, heard, done, and justified during the few seconds that entry into Shively's house was obtained. The remaining facts are not in great dispute except as to their legal and constitutional effect.

On October 12, 1995, around 2:30 a.m., a SCAT officer obtained a search warrant based on an affidavit containing information from a confidential informant (CI), who the affiant claimed had been working with the police for less than one month and had no convictions for dishonesty. The CI was alleged to have reported that

Shively sold marijuana at his residence on at least four occasions, observed at least one pound of marijuana inside Shively's apartment within the last 48 hours, and reported seeing no weapons or animals inside the residence.

After obtaining the search warrant, the SCAT officers attempted to enter Shively's residence for a surprise drug raid at around 3 a.m. by battering down two doors to the front entrance. Shively was awakened by the noise and ran with a gun toward the front foyer to investigate. He testified that through a broken panel in the door, he saw shadowy figures trying to break in, at which time he fired his gun in the direction of these individuals, resulting in bullets striking and killing officer Tony Patterson.

The State contended that Shively knew it was the police when he fired his weapon. Officer McKinley testified that he yelled, " 'Police, search warrant,' " during a pause in the battering of the second door and before Shively fired. Shively claimed he did not hear the police declare their identity and did not know it was the police when he fired his weapon.

Shively was arrested and removed from the home. Because of the shooting of Officer Patterson, the police did not at that time search for any items but rather sealed off the residence after conducting a quick search of the premises for other persons.

Around 10 a.m. the same morning, a second search warrant was obtained, authorizing the search for the items stated in the first warrant (marijuana, evidence of sale or use of marijuana or fruits or instrumentalities of such offense, and items identifying persons residing in the residence), plus additional items. The affidavit seeking the second warrant incorporated the original affidavit and also included information about the events which had transpired during the earlier entry. The police executed the second search warrant shortly thereafter, and marijuana, money, and drug paraphernalia were among the items seized from Shively's apartment..

Shively filed several motions to suppress the evidence found during the search of his home. In one motion, he argued that the initial search warrant was invalid because the supporting affidavit, on its face and from its four corners, failed to provide probable cause. This motion was submitted on the basis of the warrant, supporting

affidavit, and the pleadings. No proof was offered under oath challenging the honesty of the information in the search warrant affidavit, and a *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), hearing was not requested. The trial court found the warrant was supported by probable cause, and the Court of Appeals, relying on *State v. Jensen,* 259 Kan. 781, 787, 915 P.2d 109, *cert. denied* 519 U.S. 948 (1996), held that Shively could not later challenge the honesty of the statements as presented to the magistrate. *Shively,* 26 Kan. App. 2d at 307.

In a separate motion, Shively argued that all the seized evidence should be suppressed because of the unconstitutional execution of the no-knock entry. A suppression hearing was held on this and all other motions to suppress.

Testimony showed that SCAT officers had developed a pattern of executing drug search warrants as "dynamic entries" by breaking the door with a battering ram without knocking. Officer Voight testified that 5 to 10 percent of the warrants SCAT officers served were "knock and announce." In this case, the amount and size of the drugs expected would not be easily disposed of, although it was stated that the potential for destruction of the evidence was always a concern in executing a search warrant where drugs were anticipated.

An additional concern of the officers was the presence and likelihood that weapons would be used to protect cash and drugs. However, in this case, the affidavit utilized to obtain the search warrant stated that the CI did not see any weapons inside the house. Unfortunately, the events which came to pass during the first entry revealed that this latter statement was misleading.

The trial court found the no-knock entry was justified by the circumstances. In this ruling, the court acknowledged there is always a potential for danger to the officers in a raid, but believed that the expectation of there being a weapon in the house in this case was perhaps "flimsy." However, the court stated it was "going to rely on the potential of destruction of the contraband in denying the motion to suppress." Shively's motions for reconsideration of the suppression issues were also denied. All of the drug evidence was admitted at trial over Shively's objection, and he was found

guilty of all of the drug-related charges, as well as aggravated assault.

The Court of Appeals, relying on *Wilson v. Arkansas*, 514 U.S. 927, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995), and *Richards v. Wisconsin*, 520 U.S. 385, 396, 137 L. Ed. 2d 615, 117 S. Ct. 1416 (1997), held that the record did not support the State's position that exigent circumstances required a no-knock entry and concluded that the initial search warrant was unconstitutionally executed. We will discuss this ruling in more detail as it is the centerpiece of our grant of a limited petition for review.

Although the Court of Appeals held the first search was unconstitutionally executed as a no-knock search without sufficient exigent circumstances, it held that the drug evidence against Shively was obtained under the second search warrant, which was based on an affidavit with sufficient basis in truth and was constitutionally sufficient. Because there was no tainted evidence seized under the initial search warrant, and because the police did not rely on any additional information received during the raid to establish probable cause for the second warrant regarding Shively's drug activity, the Court of Appeals, relying on *State v. Daly*, 14 Kan. App. 2d 310, 315, 789 P.2d 1203, *rev. denied* 246 Kan. 769 (1990), held the fruit of the poisonous tree doctrine did not apply. *Shively*, 26 Kan. App. 2d at 311.

With this holding, the Court of Appeals affirmed all of Shively's convictions. We granted the limited petition for review. Because we did not grant review on any part of the petition for review related to Shively's conviction for aggravated assault, that conviction is final. The State has also filed a separate appeal in case No. 77,100 on questions reserved pursuant to K.S.A. 22-3602(b)(3), and that appeal is this day decided.

Analysis

The limited issue which we review is the Court of Appeals' ruling on the no-knock execution of the search warrant, which in turn requires an examination of the trial court's ruling. We have held that the trial court's denial of a motion to suppress evidence will be upheld on review if it is supported by substantial competent

evidence. *State v. Garcia,* 250 Kan. 310, 318, 827 P.2d 727 (1992). In *State v. Vandiver,* 257 Kan. 53, 58, 891 P.2d 350 (1995), we instructed that when reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court, but the ultimate determination of the suppression of the evidence is a legal question requiring independent appellate determination.

Shively's appeal, when argued, presented an issue of first impression in Kansas regarding when the no-knock execution of a search warrant is constitutionally reasonable under the Fourth Amendment in light of *Wilson v. Arkansas,* 514 U.S. 927. But, by the time the Court of Appeals' *Shively* opinion was filed we had determined the no-knock entry issue in *State v. Wakefield,* 267 Kan. 116, 130, 977 P.2d 941 (1999). A double homicide and burglary had been committed in *Wakefield.* Wakefield objected to the admission of evidence obtained as the result of a search of a second residence because officers, after announcing their presence, failed to wait before kicking in a door; the officers had announced their presence and waited 10 seconds before forcing the door open to the primary residence. In our consideration of the identical issue we now face, we stated in *Wakefield:*

"In 1995, the United States Supreme Court held that when executing a search warrant, the common-law principle of announcement is always an element of the reasonableness inquiry under the Fourth Amendment. *Wilson v. Arkansas,* 514 U.S. 927, 934, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995). In *Wilson,* the Supreme Court held that the Fourth Amendment incorporates the common-law requirement that, absent reasonable countervailing law enforcement interests, police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry. 514 U.S. at 934.

"A subsequent United States Supreme Court case, *Richards v. Wisconsin,* 520 U.S. 385, 137 L. Ed. 2d 615, 117 S. Ct. 1416 (1997), struck down a Wisconsin per se rule that officers are never required to knock and announce when executing a search warrant in a felony drug investigation because of the special circumstances inherent in drug investigations. The *Richards* Court held that in order to justify a no-knock entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. 520 U.S. at 386.

"Based on the *Wilson* and *Richards* restrictions, it is necessary to evaluate the police officers' actions in light of perceived exigent circumstances existing at the time of the execution of the warrant to determine if sufficient cause existed to justify the officers' failure to give Wakefield notice of their intent to execute the search warrant.

"To determine if exigent circumstances existed, the judge considered the testimony of the officers who executed the search warrant:
'[T]he officers did have information that Jason Wakefield was certainly involved in the burglary that led to the shooting.

'There was also information that there were weapons in that building. I find that the circumstances, given the proximity of the buildings, the nature of the items to be sought—and that would be weapons and ammunition—and the information that the law enforcement officers had regarding Jason Wakefield, that it was reasonable under all of the totality of the circumstances to enter without waiting the sufficient ten seconds or however many seconds between knocking and entering the building.'
The judge found that exigent circumstances existed which justified the immediate kicking in of the door of the secondary residence." 267 Kan. at 131-32.

In *Wakefield,* we set forth the standard of review stated earlier and then concluded:

"We note that the officers were investigating a burglary and a double homicide, and they had reason to believe that Wakefield, a suspected participant in the crimes, was inside the residence. The officers knew that multiple firearms had been taken in the burglary of the Brittain home, and, according to the search warrant, they believed that the stolen firearms were to be found in the secondary residence. Under the totality of these circumstances, the trial judge did not err in denying Wakefield's motion to suppress the evidence obtained in the search of his residence." 267 Kan. at 131-32.

The Court of Appeals' *Shively* opinion analyzed *Wilson* and *Richards* as we did in *Wakefield,* and further pointed to *U.S. v. Moore,* 91 F.3d 96 (10th Cir. 1996), as holding that officers are excused from the knock and announce rule when justified by exigent circumstances, which will be deemed to exist only when the officers hold an objectively reasonable belief that an emergency situation exists. The court noted that "[t]he *Moore* court further limited emergency situations regarding weapons to those in which the government can articulate how the presence of weapons affected the officers' safety. *Moore,* 91 F.3d at 98-99." *Shively,* 26 Kan. App. 2d at 310.

We agree with the Court of Appeals' analysis of the *Shively* facts and its holding that the record did not support the existence of exigent circumstances to justify the no-knock entry. It was apparent that practically all of the SCAT search warrants were executed in a no-knock manner, which is a violation of the *Richards* rule. Moreover, the CI had advised the officers that no weapons were present, and Shively was expected to be found asleep. The Court of Appeals correctly determined the initial search warrant was unconstitutionally executed.

Exigent circumstances were found in *Wakefield* but not in *Shively*, and the principles set forth in both cases will of necessity be applied as the facts dictate on a case-by-case basis.

Shively's success in obtaining the Court of Appeals ruling that the first search warrant was unconstitutionally executed did not result in suppression of the evidence underlying his drug convictions. As we summarized earlier, the second search was found to be constitutionally sufficient because no physical items were seized under the initial search warrant and because the second search warrant was based in substantial part on the first affidavit and did not rely on any additional information obtained in the first raid as to Shively's drug activity.

The Court of Appeals' *Shively* opinion held:

"The fruit of the poisonous tree doctrine does not apply to require suppression of evidence under the subsequent warrants. This doctrine is invoked when officers rely on information received during unlawful police conduct to access additional information. *State v. Daly*, 14 Kan. App. 2d 310, 315, 789 P.2d 1203, *rev. denied* 246 Kan. 769 (1990). Here, the police incorporated the initial affidavit into the subsequent search warrant affidavits and did not rely on any additional information received during the raid to establish probable cause regarding Shively's drug activity.

"The trial court did not err in denying Shively's motion to suppress." 26 Kan. App. 2d at 311.

In his supplemental brief filed herein after his petition for review was granted, Shively relied mainly on *Murray v. United States*, 487 U.S. 533, 101 L. Ed. 2d 472, 108 S. Ct. 2529 (1988), to argue that evidence seized during the second entry was tainted by the first unconstitutional no-knock entry. Shively does not question or at-

tempt to distinguish the Kansas case of *State v. Daly*, which the *Shively* opinion relied on in holding the later search was not poisoned by the earlier one. *Murray* does not require a different result from that reached by the Court of Appeals herein. Highly summarized, *Murray* held that the Fourth Amendment does not require suppression of evidence observed in a warrantless search and subsequently seized pursuant to a valid warrant, if the evidence relied upon in obtaining the later warrant is wholly independent of the prior search.

In *Murray*, federal law enforcement agents observed suspected drug traffickers driving vehicles into and out of a warehouse. When the vehicles were lawfully stopped and seized, marijuana was found inside and the drivers were arrested. The agents then forced their way into the warehouse and observed in plain view numerous burlap-wrapped bales, later determined to be marijuana. The agents left to obtain a search warrant without disturbing the bales. In applying for and receiving the warrant, the police did not mention their first entry and relied exclusively on information that they knew before they entered the warehouse. Armed with a warrant, the agents later reentered the warehouse and seized the marijuana. On appeal, the Supreme Court held that even if the initial entry into the warehouse was unconstitutional, the subsequent search under authority of a valid warrant could be an "independent source" of the evidence in the warehouse, permitting such evidence to be admissible. 487 U.S. at 542-44. In reaching this holding, the Court stated:

"The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." 487 U.S. at 542.

Shively argues that the information in the second affidavit about the events leading to the shooting of Officer Patterson was in part the basis for obtaining the second warrant such that evidence seized during the second entry and search was tainted by the first entry. We do not agree.

Although information regarding the first entry was included in the second affidavit, that information was provided only to show probable cause to search for evidence related to the shooting. The drug-related information, however, was the same in both warrant applications. The same judge who found probable cause to issue the first warrant to search for drug-related evidence issued the second warrant as well. The first warrant to look for drugs was issued without the benefit of any of the information gained during the first entry, and the police did not add any drug-related information gained during the first entry in their application for the second warrant.

Therefore, insofar as the second warrant gave authority to search for drug-related items, that decision was made on the basis of information acquired prior to the initial entry, and it cannot be said that the additional information affected the judge's decision that there was probable cause to issue the warrant to search for drug-related evidence. This is essentially what the Court of Appeals concluded. See 26 Kan. App. 2d at 311; see also *Daly*, 14 Kan. App. 2d 310 (where police having probable cause to search for cocaine unlawfully entered apartment and observed in plain view marijuana and drug paraphernalia, and where subsequent warrant to search for cocaine, marijuana, and drug paraphernalia was acquired based on pre-entry knowledge of cocaine and post-entry knowledge of the other items, the cocaine was not fruit of the poisonous tree despite the presence of the other information in the affidavit).

Finally, although Shively mentions *Segura v. United States*, 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984), and attempts to discount its authority, its holding is helpful to the State. In *Segura*, drug enforcement agents entered an apartment illegally and secured the apartment from inside while waiting for a search warrant to be obtained so that they could search the apartment for evidence of drug-related activity. As to the question of whether the illegality of the initial entry required suppression of evidence later obtained under a valid warrant, the majority held: "Whether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence because there was an independent source for the warrant under which that evidence was seized." 468 U.S.

at 813-14. Because no information obtained during the initial entry and occupation of the apartment was needed or used by the agents to secure the warrant, the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence. 468 U.S. at 814.

In the present case, the Shively residence was never searched during the first entry and was secured from the outside in a reasonable attempt to secure the premises to preserve evidence while a warrant extending to evidence of the shooting could be obtained. The challenged drug-related evidence was seized under a later warrant which was obtained without any information derived from the initial illegal entry. Simply stated, there was an independent source for the second warrant under which the evidence was seized, and, just as in *Segura*, the evidence was admissible despite the sealing off of the house while the police waited for the second warrant.

The Court of Appeals' decision is affirmed. The trial court's ultimate ruling denying suppression of the drug-related evidence is affirmed, although not for the reasons relied on by the trial court.

Affirmed.