(18 P.3d 250)

No. 85,335

STATE OF KANSAS, *Appellant*, v. JEFF BOWLES, *Appellee*.

Opinion filed January 12, 2001.

*Chris Oakley*, county attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Michael S. Holland II* and *Michael S. Holland*, of Holland and Holland, of Russell, for appellee.

Before ELLIOTT, P.J., KNUDSON, J., and JACK L. BURR, District Judge, assigned.

KNUDSON, J.: This is an interlocutory appeal by the State from the order of the district court suppressing evidence seized pursuant to a search warrant. We have jurisdiction under K.S.A. 22-3603.

The parties frame the issue on appeal to be whether the underlying affidavit in support of issuance of the search warrant was factually insufficient to establish probable cause. However, the district court conducted a *Franks* hearing to determine whether the

affidavit by Rice County Sheriff Milton Gillespie contained false statements made knowingly, intentionally, or with reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). This makes our standard of review somewhat complicated. Findings from the *Franks* hearing are to be upheld if based upon substantial competent evidence. *State v. Henry*, 263 Kan. 118, 126, 947 P.2d 1020 (1997). However, if those findings are immaterial to the magistrate's determination of probable cause or if probable cause may otherwise be said to exist without taint from the false statements identified at the *Franks* hearing, our standard of review is

"to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In making its determination, a reviewing court is required to pay great deference to the issuing magistrate's finding of probable cause for the issuance of a warrant, and such after-the-fact scrutinizing should not take the form of a de novo review." *State v. Gilbert*, 256 Kan. 419, Syl. ¶ 4, 886 P.2d 365 (1994).

We turn to the content of Sheriff Gillespie's affidavit in support of the issuance of the search warrant.

On February 16, 1999, Sheriff Gillespie filed an affidavit in support of a search warrant for Jeff Bowles' residence at 312 North Logan. The affidavit set out Gillespie's experience in law enforcement and his experience with drug dealers and drug trafficking. It stated Gillespie believed paraphernalia, records of drug transactions, currency, weapons, electronic media, photographs, and illicit and illegal drugs, among other things, were concealed at 312 North Logan. It then stated that Jeff Bowles lives at 312 North Logan and Bobby Bowles is also known to reside there from time to time.

The affidavit next provided that on January 30, 1999, the owner of a store in Lyons contacted Gillespie because Bobby Bowles and Bobby McGhee had purchased two 1-gallon solar tea bottles and asked the owner if he had any such bottles with metal tops. McGhee asked about buying sulfuric acid and plastic tubing; when told these items were not available, McGhee said he would get them at another store. Bobby Bowles then went to other stores and bought sulfuric acid and plastic tubing; this information was confirmed by the clerks who sold the material to Bobby Bowles. All of these items "are used in the manufacturing, production and sale

of methamphetamine." Also, "Bobby Bowles has been convicted of the sale of narcotics, possession of methamphetamine and has, by his own statements, been involved in the manufacture of methamphetamine."

The affidavit then stated: On February 2, 1999, Jeff Bowles purchased six cans of John Deere starting fluid, which contains 80% ether. "John Deere starting fluid is known to be a choice product in the manufacture of methamphetamine due to its high ether content." Jeff used the alias of Bill Jones when signing for the purchase of the starting fluid.

Further information in the affidavit included the following: On February 9, 1999, at approximately 12:30 a.m., Lyons Police Officer Chris Detmer was in the vicinity of 312 North Logan and smelled an odor of ether. Detmer walked around the neighborhood and smelled a mild odor coming from 329 North Sherman; he looked in the window of the detached garage at 329 North Sherman and saw a large mason jar with rubber tubing coming from its top. Based on Detmer's training and experience, this jar appeared to be a gas generator used in the production of methamphetamine. Detmer then walked to 312 North Logan where he smelled a very strong ether odor coming from the house. The backyards of 312 North Logan and 329 North Sherman are located catty-corner to each other. Detmer knocked on the door of 312 North Logan; Jeff answered the door and, when questioned about the odor, stated he had accidentally exploded a can of ether. Detmer requested permission to search the home, but Jeff denied the request.

The affidavit then stated that on February 9, 1999, about 1:45 a.m., Sergeant Dale Higgins of the Rice County Sheriff's Office drove by 312 North Logan and smelled a strong odor of ether. On February 16, 1999, a confidential informant (CI) was interviewed by Gillespie and provided the following information:

"CI has personal knowledge that Marty Sheridan has manufactured methamphetamine at least four times in the last two months; that the CI has observed Sheridan provide and sell methamphetamines to other individuals; that the CI has personal knowledge that Bobby Bowles and Jeff Bowles have also been involved in the manufacture of methamphetamines; that this has been done at the residence of Jeff Bowles; that similar information has also been provided to the CI

by Sheridan that Bobby Bowles and Jeff Bowles are producing methamphetamine at the Jeff Bowles' residence."

The last paragraph of the affidavit requested the magistrate to issue a " 'no-knock' " warrant because the last time Bobby Bowles was arrested by Gillespie "he was in possession of no less than six guns and has made statements in the last year that he would not go back to prison alive."

Magistrate Judge Don L. Alvord issued a search warrant for 312 North Logan on February 16, 1999. Bowles filed a motion to suppress all evidence seized by the State as a result of the search authorized by the warrant, claiming the search warrant and/or affidavit in support of the search warrant was factually insufficient for the judge to have issued a warrant to search Jeff's home. The district court conducted a *Franks* hearing because in numbered paragraph (19) of the motion, Bowles claimed "[t]hat the affidavit is false in alleging that Bobby Bowles resided at 312 North Logan, Lyons, Rice County, Kansas, from time to time, which misrepresentation will be proved by the testimony of Jeff Bowles and his affidavit attached."

At the evidentiary hearing, Jeff Bowles testified Bobby Bowles never stayed the night, resided, or lived with him at 312 North Logan. Sheriff Gillespie testified he had never seen Bobby Bowles in the defendant's house. The sheriff also stated he did not know when Bobby Bowles was seen in the defendant's home by the people who had provided that information.

After the evidentiary hearing, the district court granted the motion to suppress based on remoteness, lack of specificity, and lack of nexus between the information in the affidavit and 312 North Logan. The court also concluded the statements within the affidavit regarding the CI's information about Marty Sheridan did not indicate Jeff participated in manufacturing methamphetamine and did not implicate 312 North Logan as a location where methamphetamine was being produced.

Conspicuously absent from the district court's ruling is any finding that Sheriff Gillespie lied or made a statement within the affidavit in reckless disregard for the truth as to whether Bobby

Bowles lived with his brother on occasion. In any event, whether Bobby Bowles lived with the defendant is not particularly significant in determining whether the affidavit supports probable cause. The uncontroverted facts remain that Bobby Bowles is the defendant's brother and is at the defendant's residence from time to time.

As to the defendant Jeff Bowles' residence, the district court did state:

"I have four cases in front of me that have Mr. Bowles as the defendant. Each one of those has a different residence, so whether this was at this residence or somewhere else is totally up in the air. This has no connection to the address, and I mean, just the affidavit that this is used to—for two different residences, whether they are catty-corner to each other or not doesn't make any—a bit of difference, doesn't make this any more reliable than any argument that is—or anything that's set forth in here. There is no probable cause for this search warrant."

The district court's reference to other cases ostensibly showing alternative residences for the defendant is clearly outside the record. Additionally, this representation by the district court does not contradict the information in the Gillespie affidavit that on February 9, 1999, Bowles was living at 312 North Logan. We conclude the court's statement to be insufficient as a finding of fact under the evidence presented at the *Franks* hearing. Consequently, the issue on appeal must be based upon whether the four corners of the affidavit support probable cause for issuance of the search warrant.

Our Supreme Court has compared probable cause supporting the issuance of a search warrant to a jigsaw puzzle where

" '[b]its and pieces of information are fitted together until a picture is formed which leads a reasonably prudent person to believe a crime has been or is being committed and that evidence of the crime may be found on a particular person or in a place or means of conveyance.' [Citation omitted.]" *State v. Lockett*, 232 Kan. 317, 320, 654 P.2d 433 (1982).

We do not find the content of the affidavit in this appeal to be remote or stale. Most of the information in the affidavit referred to events that had occurred within 30 days of the application for a warrant. Seven days before the warrant was issued, two law enforcement officers smelled ether emanating from 312 North Lo-

gan, and Bowles gave a dubious explanation of the odor, together with a refusal to permit a search of his residence. Additionally, the suspected criminal activity is the maintenance of a clandestine laboratory to manufacture methamphetamine, not some limited, transitory event. It is unreasonable to conclude there was a lapse of time tending to remove indicia of probable cause under the facts and circumstances shown within the underlying affidavit. See *State v. Jacques*, 225 Kan. 38, Syl. ¶ 2, 587 P.2d 861 (1978). Based upon the content of the affidavit, a magistrate could reasonably conclude the items being sought would still be located on the premises of 312 North Logan.

We have set out in detail the content of the affidavit. We conclude the factual representations of the affidavit would lead a reasonably prudent person to believe a methamphetamine lab and related contraband would be found at 312 North Logan.

One of Bowles' contentions is that his refusal to let the police officer come into his home on February 9, 1999, should not have been considered to support probable cause, citing *Florida v. Royer*, 460 U.S. 491, 498, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983). The holding in *Royer* is distinguishable from the case before us. In *Royer*, the police attempted to justify a warrantless search based solely upon Royer's refusal to consent to a search. Here, the issue is not whether the exercise of a constitutional right to refuse a request to search, standing alone, can be used to justify a warrantless search. That fact was only one of many in the affidavit that supported a finding of probable cause. See *U.S. v. Manuel*, 992 F.2d 272, 274 (10th Cir. 1993) (noting that *Royer* held the exercise of a right to refuse consent *alone* cannot be the basis to formulate reasonable suspicion). We are not persuaded it was inappropriate for the magistrate to consider Bowles' refusal to consent to a search, together with all of the other circumstances supportive of probable cause. In any event, even if we were to redact that single factual representation, the affidavit still contains overwhelming averments of fact supporting probable cause.

Finally, we do recognize a part of the information in the affidavit was based on hearsay from a CI with no showing regarding his basis of knowledge, veracity, or reliability. However, the unadorned

statements of the CI were substantially corroborated by the other factual information known by the police. See *State v. Olson*, 11 Kan. App. 2d 485, 491, 726 P.2d 1347, *rev. denied* 240 Kan. 805 (1986) (in cases lacking evidence of the informant's reliability or credibility, independent police investigation is valuable in corroborating the informant's tip).

We hold the underlying affidavit in support of the warrant does support a finding of probable cause; the magistrate did not err in issuing the search warrant for search of the premises at 312 North Logan. The district court's order suppressing evidence seized under the warrant is set aside, and this case is remanded for trial or further proceedings consistent with our opinion.

Reversed and remanded.