(61 P.3d 722)
No. 88,828

STATE OF KANSAS, *Appellant,* v. NATHAN R. HENDRICKS, *Appellee.*

Opinion filed January 17, 2003.

*Vernon E. Buck,* assistant county attorney, *J. Marcus Goodman,* county attorney, and *Carla J. Stovall,* attorney general, for appellant.

*Don C. Krueger,* of Emporia, for appellee.

Before GREEN, P.J., MARQUARDT, J., and JOHN E. SANDERS, District Judge, assigned.

MARQUARDT, J.: The State appeals the trial court's grant of Nathan R. Hendricks' motion to suppress evidence. We affirm.

On October 2, 2001, Officer James Pritchard visited Nathan Hendricks and Erin Viren's apartment. Officer Pritchard was searching for Nathan's brother, Otto, who was wanted on a Missouri arrest warrant. Nathan denied knowing Otto's whereabouts.

On October 3, 2001, Erin told the police where to find Otto. When officers approached Otto, he identified himself as Greg Hendricks and said that Otto was his brother. Only when officers threatened to have Nathan provide Otto's identification did Otto confirm his identity and date of birth. Otto was arrested and taken to jail.

During questioning, Otto told Officer Pritchard that he had seen approximately 14 pounds of marijuana in Nathan's apartment on October 2, 2001. He said that Erin was a drug dealer and ran a prostitution ring. Otto described a concealed compartment where marijuana was stored.

Officer James Tilton interviewed Otto. Otto was questioned about narcotics being stored in Nathan's apartment and Nathan's involvement in a check fraud scheme. Otto referred to Erin as the "bitch."

Detective Mark Schondelmaier prepared an affidavit supporting a request for a warrant to search Nathan's apartment. The affidavit stated that Otto had provided information that Erin had ecstacy, "crank," and marijuana in the apartment. The affidavit also included the information about the concealed compartment, the expected delivery of additional narcotics, and the marijuana bricks in the apartment. Otto's recent arrest, and his belief that Erin was responsible for turning him in to authorities, were included in the affidavit.

A judge signed the warrant and the search was executed on October 3, 2001, while Erin and Nathan were inside the apartment. A locked box containing crystal methamphetamine and drug paraphernalia was discovered. Nathan claimed that the box belonged to his brother. Police were unable to find the compartment, the bricks of marijuana, and the methamphetamine described by Otto. Erin told the police that Nathan was dealing ecstasy and crystal methamphetamine. Later, Nathan told officers that he had sold methamphetamine.

Nathan was arrested and charged with one count of possession of methamphetamine with the intent to sell, deliver, or distribute within 1,000 feet of a school, one count of possession of drug paraphernalia, and one count of possession of cocaine. Nathan filed a motion to suppress the evidence seized from his apartment. Following a hearing, the trial court granted Nathan's motion to suppress. The trial court noted that (1) Otto had lied to Officer Pritchard about his identity; (2) Officer Pritchard gave this information to the affiant, Detective Schondelmaier; (3) although Detective Schondelmaier denied knowledge of Otto's dishonest behavior, Detective Schondelmaier spoke with Officer Pritchard about Otto's credibility; and (4) the affidavit did not reference Otto's lies concerning his identity or Officer Tilton's suspicions regarding Otto's involvement in a check kiting scheme. The trial court determined that the foregoing omissions were material because Otto had an established motive for lying. Moreover, the trial court compared Otto to a confidential informant in establishing his credibility as a police informant.

The State maintains that the omitted information was not material or deliberately omitted from the affidavit.

"[A] search warrant shall be issued upon oral or written application which states facts sufficient to show probable cause that a crime has been or is being committed and which particularly describes the person, place, or means of conveyance to be searched. Before a search warrant may be issued, there must be a finding of probable cause by a neutral and detached magistrate." *State v. Longbine*, 257 Kan. 713, 717, 896 P.2d 367 (1995).

"In determining whether probable cause exists to support a search warrant, the magistrate must view the affidavit under the totality of the circumstances. This requires the issuing magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. [Citation omitted.]" *State v. Ruff*, 266 Kan. 27, 36, 967 P.2d 742 (1998).

The factual findings of a trial court are normally given great deference by an appellate court. *State v. Lum*, 27 Kan. App. 2d 113, 114, 998 P.2d 137, *rev. denied* 269 Kan. 938 (2000). However, the ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001).

Generally, a defendant may not dispute allegations supporting a search warrant; however, a hearing under *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), is required if a defendant makes a showing supported by sworn allegation that the application for search warrant contained material statements of deliberate falsehood or of reckless disregard for the truth which were necessary to the finding of probable cause. The same rule applies to a deliberate omission of material information. *State v. Bowen*, 27 Kan. App. 2d 122, 131-32, 999 P.2d 286 (2000).

Nathan did not request a *Franks* hearing. However, the trial court found that Nathan provided sufficient documentation to support an allegation that there had been a deliberate material omission of information from the affidavit. Therefore, the hearing on Nathan's motion to suppress was, in essence, a *Franks* hearing.

"A *Franks* hearing is simply an evidentiary hearing on a motion to suppress evidence based on a challenge to the facts included or omitted from a search warrant. [Citation omitted.] There is no particular remedy if the defendant proves the need for a hearing. After the hearing, the trial court still must decide if the facts showed

probable cause to issue the warrant. [Citation omitted.]" *Bowen*, 27 Kan. App. 2d at 132.

In other words, the trial court had to discern whether there would have been probable cause to issue the search warrant had the magistrate been aware of the omitted information. See *State v. Lockett*, 232 Kan. 317, 320, 654 P.2d 433 (1982). The information must be both material and deliberately omitted. See *Lockett*, 232 Kan. at 319.

Detective Schondelmaier sought confirmation of Otto's information by asking Officers Tilton and Heller to question Otto about his statements regarding narcotics in Nathan's apartment. After finding that the omissions were deliberate, the trial court focused on whether the information was material. The State's argument is that the omitted information was not material, citing *State v. Cowdin*, 25 Kan. App. 2d 176, 959 P.2d 929, *rev. denied* 265 Kan. 887 (1998), and *State v. Arculeo*, 29 Kan. App. 2d 962, 36 P.3d 305 (2001), as support for its argument. However, both of these cases are factually distinct from the instant case.

In *Cowdin*, police officers arrived at the defendant's house in response to a call regarding a domestic dispute. Based on the observation of possible stolen items, the officers later questioned the defendant's wife, who told the officers that there were guns, stolen items, marijuana, and other drugs in the home. A search warrant was issued, and the house was searched. Drugs, stolen guns, and other items of contraband were found. The trial court suppressed the evidence based on the omission of certain information from the affidavit. Specifically, the affidavit did not document the spouse's recent false report of rape, her past use of drugs, a theft conviction, and the possibility of her involvement in an extramarital affair with a member of another police department. This court upheld the search warrant on review. The spouse was deemed a reliable informant based on her status as the defendant's wife and on her residency in the home to be searched. Observations by law enforcement also partially corroborated the spouse's account of stolen property. 25 Kan. App. 2d at 179-81.

In *Arculeo*, the defendant's common-law wife, Darlene Murdock, provided information to law enforcement officers which

formed the basis of an affidavit in support of a warrant to search the defendant's and Murdock's apartment. Murdock's mental and intellectual handicaps were omitted from the affidavit. The defendant filed a motion to suppress, which was denied by the trial court. This court upheld the search warrant and stressed that Murdock was the defendant's common-law wife and that Murdock's veracity was bolstered by her admitted involvement in the defendant's drug activity. 29 Kan. App. 2d at 967-68.

In the instant case, Otto's statements were aimed solely at implicating Erin in criminal activity. Otto's motivation and the targeted information removed him from the category of a "nonconfidential informant." Thus, the trial court accurately found that Detective Schondelmaier's omissions were material to determining whether probable cause existed for the issuance of the search warrant.

The State argues that Otto should be classified as an identified informant. An identified citizen-informant's tip is high on the reliability scale. Further weighing in favor of the reliability and veracity of a named citizen-informant is that the informant is exposed to possible criminal and civil prosecution if the report is false. *State v. Slater,* 267 Kan. 694, 700-01, 986 P.2d 1038 (1999).

This court upheld a residential search for marijuana conducted on the basis of a tip from identified informants in *State v. Musick,* 30 Kan. App. 2d 76, 38 P.3d 144 (2002). The informants, who provided their names and said they worked for the property owner, told police that they had been in the property occupied by a tenant and had observed marijuana plants in the basement and bedroom and a stack of money on a dining room table.

The *Musick* court noted that informants who provide their names and identifying information are not as "unreliable as anonymous tipsters and confidential informants, for whom corroboration is required before a residential search warrant is issued." 30 Kan. App. 2d at 78. The informants in *Musick* appear to fit the category of citizen-informants; however, not all identified informants are disinterested citizen witnesses.

" 'It does not follow . . . that if the name of the person providing the information *is* disclosed, then he is by virtue of that fact alone properly characterized

as a citizen-informer entitled to the presumption of reliability. "'That a person is named is not alone sufficient grounds on which to credit an informer, but it is one factor which may be weighed in determining the sufficiency of an affidavit.' Thus, if the person giving the information to the police is identified by name but it appears that this person was a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency, then the more strict rules regarding the showing of veracity applicable to an informer from the criminal milieu must be followed. [Citation omitted.]' " *State v. Davis*, 8 Kan. App. 2d 39, 43, 649 P.2d 409 (1982).

Detective Schondelmaier's affidavit clearly established that Otto was not a disinterested citizen-informant who had no apparent ulterior motive for providing false information. The affidavit sets forth the circumstances of Otto's arrest and that he believed Erin to be responsible for turning him in to authorities. Otto's information was not given in the spirit of a concerned citizen. The trial court did not err when it determined that Otto was not a citizen-informant whose information could be deemed reliable enough to sustain a search warrant. Rather, information surrounding Otto's veracity and possible police corroboration of the information he provided were necessary to establish that probable cause existed to issue a search warrant. See *State v. Ratzlaff*, 255 Kan. 738, 748, 877 P.2d 397 (1994).

Other than Otto's statements, the only information in the affidavit in support of probable cause was Officer Pritchard's earlier visit to the apartment, which confirmed that the premises were occupied by Nathan and Erin. No information in the affidavit attested to or established Otto's credibility and veracity as an informant. Moreover, had the magistrate been apprised of the omitted information, the combined bits and pieces of information would have failed to establish that probable cause existed under the totality of the circumstances. See *State v. Shively*, 26 Kan. App. 2d 302, 306, 987 P.2d 1119 (1999), *aff'd* 268 Kan. 589, 999 P.2d 259 (2000).

The State argues that if this court finds the omission of Otto's statements was material and deliberate, the evidence seized pursuant to the warrant is nevertheless admissible under the good faith exception to the exclusionary rule. The good faith exception to the exclusionary rule, applied by our Supreme Court in *State v. Probst*,

247 Kan. 196, 795 P.2d 393 (1990), provides that evidence seized pursuant to a warrant should only be suppressed on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 918, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984).

Under the good faith exception in *Leon*, evidence should not be excluded unless it is shown:

"(1) that the judge or magistrate who issued the warrant was deliberately misled by false information; (2) that the judge or magistrate wholly abandoned his or her neutral and detached role; (3) that the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; or (4) that there was so little indicia of probable cause contained in the warrant that it was entirely unreasonable for an officer to believe the warrant valid. [Citation omitted.]" *Probst*, 247 Kan. at 204.

The State contends that the police exhibited good faith in their investigative efforts and Otto's misrepresentation about his identity was unrelated to information supplied in the affidavit. Although the trial court found that the facts did not support the idea that the affiant intentionally made false statements in the affidavit, the trial court stated that the magistrate would have required verification of the information in the affidavit had the information affecting Otto's veracity been included in the affidavit. As the *Probst* court noted, "a deliberate omission is often equal to an actual misstatement" in determining whether a magistrate may have been misled by false information. 247 Kan. at 206.

Additionally, the stated purpose of the exclusionary rule is to deter police misconduct. *Leon*, 468 U.S. at 916. Detective Schondelmaier's deliberate omission of material information in the affidavit, knowing that Officer Pritchard was suspicious of the information provided by Otto, is not indicative of an officer's actions made in good faith.

The trial court did not err in granting Hendricks' motion to suppress.

Affirmed.