(156 P.3d 675)
No. 95,466

STATE OF KANSAS, *Appellee,* v. JAMES LANDIS, *Appellant.*

Opinion filed March 16, 2007.

*Charles A. O'Hara,* of O'Hara, O'Hara & Tousley, of Wichita, for appellant.

*Ty Kaufman,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before GREEN, P.J., ELLIOTT and MALONE, JJ.

GREEN, J.: James Landis appeals his convictions and sentences for possession of marijuana with intent to sell within 1,000 feet of a school in violation of K.S.A. 65-4163(b); possession of methamphetamine in violation of K.S.A. 65-4160; possession of marijuana without a drug tax stamp in violation of K.S.A. 79-5208; and possession of drug paraphernalia in violation of K.S.A. 65-4152. Landis argues that the evidence obtained during the search of his resi-

dence should have been suppressed because material information was deliberately omitted from the affidavit in support of a search warrant.

We determine that the affidavit, which was based solely on hearsay statements from a person who was a participant in the crime under investigation, failed to establish probable cause to search Landis' residence. Moreover, consideration of the information deliberately omitted from the affidavit further magnifies the lack of probable cause in the affidavit. Because there was not probable cause to issue the search warrant, the evidence obtained from the search of Landis' residence should have been suppressed. Accordingly, we reverse and remand with directions to suppress the evidence obtained from the search.

One afternoon in June 2004, Trooper Dale Patrick stopped Janet Melroy for a traffic violation. Kevin Brown, Melroy's son, was a passenger in the car along with his two children and his girlfriend. During the stop, Patrick found marijuana and a pipe in the car. Melroy and Brown were placed under arrest and taken separately to the police station.

While driving to the police station, Patrick questioned Melroy about where she had purchased the marijuana. Initially, Melroy said that she had purchased the marijuana from a man named "John" in Wichita. Melroy told Patrick that she had purchased marijuana from this person several times. Later in their conversation, however, Melroy stated that this was the first time she had bought marijuana from him. Patrick testified that he asked Melroy whether she had purchased the marijuana in Canton, but she responded no. When Patrick asked Melroy where she had purchased the marijuana, Melroy responded that she bought it in several different places. Melroy also told Patrick that she met the person in McPherson. Patrick testified that he confronted Melroy about her conflicting statements and told her that he did not think she was being truthful with him. After arriving at the police station, Patrick told Detective Travis Hawkinson about Melroy's conflicting statements.

When Patrick and Hawkinson interviewed Melroy at the police station, Melroy changed her story and told the officers that she had

obtained the marijuana from Landis at his residence earlier that day. Melroy told the officers that Landis had "fronted" her the marijuana and that she was supposed to pay him for it at a later time. Melroy stated that she had smoked marijuana at Landis' residence that day. Melroy described Landis' home and its location to the officers. Patrick testified that Melroy stayed consistent with her story that she had obtained the marijuana from Landis.

After the interview with Melroy, Hawkinson submitted an affidavit for a search warrant of Landis' residence. The affidavit for the search warrant contained the following information: that 1/4 ounce of marijuana and drug paraphernalia had been found in a car during a traffic stop; that Melroy and Brown were arrested and taken to the police station; that Melroy told the officers during her interview at the police station that she had purchased the marijuana on credit from Landis at his residence; that Melroy stated that Landis had handed her the marijuana when she came out of the bathroom at his residence; that Melroy stated that she was coming from Landis' residence when she was stopped by Patrick; that Melroy told the officers that she had previously purchased marijuana from Landis on several occasions; that Melroy described Landis' residence; and that Hawkinson obtained Landis' address from another officer.

The trial court issued a search warrant for Landis' residence. The search warrant was executed at Landis' residence that evening. During the search, Landis revealed to Hawkinson where the drugs in his residence were hidden. According to Hawkinson, Landis went to the hot water heater in his house and got down on his hands and knees and pulled out a green sock. Landis then took a metal pipe and marijuana out of the sock. Landis also retrieved a small bag from underneath the water heater. Inside the bag was a plastic snort tube, methamphetamine, and marijuana. In addition, marijuana was discovered in Landis' garage.

Landis was charged in an amended complaint with possession of marijuana with intent to distribute within 1,000 feet of a school in violation of K.S.A. 65-4163(b), possession of methamphetamine in violation of K.S.A. 65-4160, possession of marijuana without drug tax stamps in violation of K.S.A. 79-5208, and possession of

drug paraphernalia with intent to use in violation of K.S.A. 65-4152.

Before trial, Landis moved to suppress the evidence obtained during the search of his home. Landis argued that the affidavit for search warrant lacked probable cause on its face. Landis maintained that there were no facts in the affidavit upon which to find Melroy reliable. Moreover, Landis contended that the affidavit omitted Melroy's conflicting statements about where she had obtained the marijuana and that the judge issuing the search warrant was never made aware of those conflicting statements.

At the suppression hearing, Hawkinson testified that he knew Melroy had given conflicting statements concerning from whom Melroy had purchased the marijuana. Nevertheless, Hawkinson decided not to put this information in the affidavit. When asked why he did not include the information in the affidavit, Hawkinson stated: "Because almost every interview that we do with something like this, they're afraid, they make up a story." According to Hawkinson, he decided that Melroy's statements that she obtained the marijuana from someone other than Landis were not credible.

The trial court later filed a letter opinion on Landis' motion to suppress. The trial court found that Hawkinson had deliberately omitted information concerning Melroy's inconsistent statements from his affidavit for the search warrant. Moreover, the trial court found that this information was material, stating: "Conflicting statements made by an informant about the source of drugs clearly bear on the credibility of that informant, and should be disclosed to a magistrate in the search warrant affidavit." Nevertheless, the trial court found that this deliberate material omission did not destroy the probable cause for issuance of the warrant. The trial court stated that had the judge known about the omitted statements, he still would have issued the search warrant for Landis' residence. As a result, the trial court denied Landis' motion to suppress.

Landis' case proceeded to trial. The State was allowed to present testimony from Melroy concerning her purchase of marijuana from Landis. In her testimony, Melroy admitted to buying a 1/4 ounce of marijuana from Landis just before she was pulled over by Pat-

rick. The jury found Landis guilty of the charged offenses. Landis was sentenced to 68 months in prison.

## Probable Cause for Issuance of Search Warrant

On appeal, Landis contends that the evidence obtained during the search of his residence should have been suppressed because material information was deliberately omitted from the affidavit for search warrant. Landis points out that Hawkinson failed to include in the affidavit for the search warrant Melroy's conflicting statements about where and from whom she obtained the marijuana. Landis contends that this omitted information combined with the facts alleged in the search warrant affidavit failed to establish probable cause to issue the search warrant and that his motion to suppress should have been granted.

## Standard of Review

In reviewing the trial court's denial of Landis' motion to suppress, this court reviews the factual underpinnings of the trial court's decision for substantial competent evidence. This court reviews the trial court's ultimate legal conclusion by a de novo standard with independent judgment. This court does not reweigh evidence, determine the credibility of witnesses, or resolve conflicts in the evidence. *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

Under *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), a criminal defendant may challenge the veracity of an affidavit used by police to obtain a search warrant. *State v. Ratzlaff*, 255 Kan. 738, 753, 877 P.2d 397 (1994). Noting that a criminal defendant can challenge an affidavit for search warrant when there has been a deliberate omission, our Supreme Court in *State v. Grissom*, 251 Kan. 851, 907, 840 P.2d 1142 (1992), stated:

"In *State v. Lockett*, 232 Kan. 317, 319, 654 P.2d 433 (1982), this court, relying upon *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), reviewed the general rules applying to a false statement in an affidavit for a search warrant and extended the rules to a deliberate omission. This court stated that a person attacking the affidavit must show the deliberate omission of material information. 232 Kan. at 319."

Thus, a defendant attacking the sufficiency of an affidavit for a search warrant based upon an omission in the affidavit must establish two things: (1) that the omission was deliberate; and (2) that the omission was material. *Lockett*, 232 Kan. at 319. Each of these prongs will be discussed separately.

*Deliberate Omission*

The trial court in this case found that "Detective Hawkinson deliberately omitted information which was available to him as a result of his conversations with Trooper Patrick and Janet Melroy." The trial court noted that although Hawkinson might not have known all of the details of Melroy's statements concerning her purchases from "John" in Wichita, Hawkinson did know that Melroy had made inconsistent statements about obtaining the drugs and paraphernalia from someone other than Landis. The trial court stated that although Hawkinson and Patrick did not find those statements to be credible, the judge issuing the search warrant should have been made aware of Melroy's statements.

In its brief, the State does not contest the trial court's finding that the omission of Melroy's inconsistent statements was deliberate. At the suppression hearing, Hawkinson testified that he knew that Melroy had given conflicting statements concerning from whom she had purchased the marijuana. Nevertheless, Hawkinson decided not to put this information in the affidavit. According to Hawkinson, he decided that Melroy's statements that she obtained the marijuana from someone other than Landis were not credible. Hawkinson's testimony establishes that the omission was deliberate. As a result, substantial competent evidence exists in the record to support the trial court's finding that the omission was deliberate.

*Material Omission*

As discussed above, a defendant attacking an affidavit for search warrant based upon a deliberate omission must also establish that the omission was material. *Lockett*, 232 Kan. at 319. This court determines materiality by inquiring whether the judge issuing the

search warrant would have found probable cause if the omitted material had been included. *Lockett*, 232 Kan. at 320.

Here, the trial court found that even if the issuing judge had known about the omitted statements, he still would have issued the search warrant for Landis' residence. The trial court noted that Melroy's earlier statements implicating someone other than Landis were contradictory, vague, and confusing. On the other hand, Melroy's later statement implicating Landis was very specific as to the time, matter of purchase, and location of Landis' residence. The trial court stated that had the issuing judge known about Melroy's statements concerning "John" and Wichita, "under the totality of the circumstances he would have been more inclined to rely on the detailed specific information given ultimately by Melroy about her dealings with Landis." The trial court concluded by stating: "I believe that there was adequate probable cause in the search warrant affidavit, and I cannot say clearly that probable cause was destroyed by the deliberate omission by Detective Hawkinson."

In reviewing the trial court's decision, this court must analyze both the affidavit for search warrant and the information omitted from the affidavit to determine whether there was probable cause to issue the search warrant. In his motion to suppress filed with the trial court, Landis argued: (1) that the affidavit for search warrant on its face did not establish probable cause to issue the search warrant; and (2) that the affidavit, along with the omitted information, did not establish probable cause to issue the search warrant. Although these two arguments are not separately set out in Landis' appellate brief, it makes sense to first look at the information contained in the affidavit and then the omitted information. See *State v. Colbert*, 257 Kan. 896, 907, 896 P.2d 1089 (1995); *State v. Hendricks*, 31 Kan. App. 2d 138, 144, 61 P.3d 722 (2003) (first reviewing sufficiency of affidavit to determine whether omissions were material).

*Evaluation of Affidavit*

In the recent case of *State v. Hicks*, 282 Kan. 599, Syl. ¶ 1, 147 P.3d 1076 (2006), our Supreme Court set forth the standard used by an issuing magistrate when evaluating an affidavit for a search warrant:

"In determining whether probable cause exists to support a search warrant, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of any person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

Our Supreme Court in *Hicks* further set forth the standard used by a reviewing court when a defendant challenges an affidavit for a search warrant:

"When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." 282 Kan. 599, Syl. ¶ 2.

After citing Hawkinson's qualifications, the affidavit for the search warrant read in pertinent part:

"On June 9 2004, at approximately 1715 hr. Kansas Highway Patrol Trooper Dale Patrick contacted this Affiant by phone. Trooper Patrick stated that he had conducted a traffic stop on a vehicle approximately 1 mile west of Galva on Highway US. 56. During the traffic stop Trooper Patrick found approximately 1/4 ounce of marijuana and drug paraphernalia in the vehicle. 2 of the occupants, a Janet Melroy and Kevin L. Brown were subsequently arrested for possession of marijuana and drug paraphernalia. Trooper Patrick asked that I come to the location of the traffic stop to assist. At approximately 1730 hr. I arrived at the location of the traffic stop and spoke to Trooper Patrick. Trooper Patrick asked me to transport Kevin Brown to the McPherson County Jail, while he transported Janet Melroy. Trooper Patrick also advised me that he had given Kevin Brown the Miranda Warning prior to my arrival. At approximately 1735 hr. I transported Kevin Brown to the McPherson County jail. While enrout I asked Brown whom the marijuana belonged to. Brown stated that the marijuana belonged to his mother, Janet Melroy.

"At June 9, 2004 at approximately 1741 hr. Trooper Patrick and I conducted an interview with Janet Melroy. The interview took place in the McPherson County Jail and Melroy gave the following information:

"Melroy stated that she had just left Jimmy Landis' residence in Canton, McPherson County Kansas just before being stopped and arrested on June 9, 2004. Melroy had gone to the Landis residence to buy 1/4 ounce of marijuana from Landis. While at the Jimmy Landis residence Melroy went into the bathroom and when she came out Jimmy Landis gave her approximately 1/4 ounce of marijuana. Melroy advised this Affiant that she received the marijuana today and would then pay Landis for the marijuana when she got paid this next Friday. Melroy advised this Affiant that she has bought marijuana from Landis in the past on several occasions. Melroy stated that Jimmy Landis lives in a light blue house with a white fence around the porch. The house sits on the north side of Grove Street in Canton, McPherson County Kansas.

"On June 9, 2004 at approximately 1853 hr. this Affiant spoke to Canton Police Officer Mosher. Officer Mosher advised me that on April 28, 2004 he took a written statement from Jimmy Landis. In the statement Jimmy Landis gave his home address as 128 Grove Street Canton, Kansas. Officer Mosher also states that he knows from past contacts that Jimmy Landis lives at 128 Grove St. in Canton Kansas.

"Therefore, this Affiant believes that probable cause exists to believe that marijuana, drug paraphernalia used to ingest drugs, and drug paraphernalia, are located on the premises at 128 Grove, Canton, McPherson County Kansas. The same residence occupied by Jimmy Landis."

### a. Informant

All of the information concerning Landis' involvement in selling and possessing drugs came exclusively from Melroy's statements. This information was hearsay. "Hearsay is acceptable in such affidavits, but among the circumstances to be considered by the magistrate in determining whether probable cause exists to support a search warrant are the 'veracity' and the 'basis of knowledge' of any person providing hearsay information. [Citations omitted.]" *Hicks*, 282 Kan. at 614. Mere conclusions by the affiant are insufficient to establish probable cause. *State v. Hemme*, 15 Kan. App. 2d 198, 806 P.2d 472, *rev. denied* 248 Kan. 998, *cert. denied* 502 U.S. 865 (1991).

Our Supreme Court has recognized that concern over the "veracity" and "basis of knowledge" considerations "falls by the wayside if 'an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him [or her] to criminal liability.' [Citations omitted.]" *Hicks*, 282 Kan. at 614. Nevertheless, when the person providing the information was

a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency, the presumption of reliability is inapplicable:

" 'It does not follow . . . that if the name of the person providing the information is disclosed, then he is by virtue of that fact alone properly characterized as a citizen-informer entitled to the presumption of reliability. "That a person is named is not alone sufficient grounds on which to credit an informer, but it is one factor which may be weighed in determining the sufficiency of an affidavit." Thus, if the person giving the information to the police is identified by name but it appears that this person was a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency, then the more strict rules regarding the showing of veracity applicable to an informer from the criminal milieu must be followed. [Citation omitted.]' " *State v. Davis*, 8 Kan. App. 2d 39, 43, 649 P.2d 409 (1982).

Here, Melroy was a participant in the crime under investigation. She had been arrested and was in police custody when she made her statements. She had not come forward as a concerned citizen to give the police information concerning Landis' involvement in drugs. Melroy was not a disinterested citizen-informer who was entitled to a presumption of reliability. Rather, information surrounding Melroy's veracity and possible police corroboration of her statements were necessary to establish probable cause for the search warrant. See *State v. Hendricks*, 31 Kan. App. 2d at 144. Because Melroy's statements were the only evidence implicating Landis in the sale of drugs, it was incumbent upon the officers to independently corroborate her statements or to include other information establishing her credibility in the affidavit.

### b. Corroboration

Nevertheless, in the affidavit, the only corroboration of Melroy's statements was confirmation that Landis lived on Grove Street. In *State v. Olson*, 11 Kan. App. 2d 485, 492, 726 P.2d 1347, *rev. denied* 240 Kan. 805 (1986), police corroboration of the defendant's address supplied by the informant was insufficient to establish the reliability or credibility of the informant. See also *Hemme*, 15 Kan. App. 2d 198 (holding that information in affidavit supporting search warrant insufficient to establish reliability or credibility of informant where only corroboration of informant's statements was

confirmation of defendant's address). Under *Olson* and *Hemme*, police corroboration of the location of Landis' residence was insufficient to establish Melroy's reliability or credibility.

No other information in the affidavit supported Melroy's reliability or credibility. There was no indication that the officers had established a relationship with Melroy where she had previously provided reliable information. There was no information that the police had reason to believe that Melroy was a credible source. Moreover, there was no attempt by the police officers to independently investigate Landis' involvement in drugs. "In the absence of any evidence establishing the reliability or credibility of the informant, corroboration by an independent police investigation would help establish probable cause. [Citation omitted.]" *Hemme*, 15 Kan. App. 2d at 202. There was no indication that the police observed any activities at Landis' residence that would confirm Melroy's statements. As discussed above, the only independent police investigation in this case was the verification of the location of Landis' residence. This was simply inadequate to establish that Melroy was a reliable source.

### c. Previous Drug Purchases

Moreover, the only information in the affidavit indicating that drugs might be found at Landis' residence came from Melroy's statement that she had purchased drugs there earlier that day. Nevertheless, in *State v. Morgan*, 222 Kan. 149, 153, 563 P.2d 1056 (1977), our Supreme Court held that "[e]vidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location." Although "[a] protracted or continuous course of drug traffic at a particular location unquestionably would support the determination of probable cause," *State v. Jacques*, 225 Kan. 38, 42, 587 P.2d 861 (1978), that was not the case here. Although the affidavit points to Melroy's statements that she had previously purchased marijuana from Landis in the past, there were no details as to where Melroy had made the past purchases. The drug purchase could have taken place in a car, at another person's residence, or in a public place. There was nothing

in the affidavit that established that these previous drug purchases took place at Landis' residence.

When considering the totality of the circumstances set forth in the affidavit and keeping in mind the deferential standard that must be applied, we determine that the issuing magistrate did not have a substantial basis for concluding probable cause existed.

### d. Omitted Information

Moreover, this lack of probable cause becomes magnified when we consider the information that was deliberately omitted from the affidavit. Melroy initially implicated "John" as the person who sold her marijuana. When discussing her purchase of drugs from "John," she made conflicting statements concerning where she had purchased the drugs and whether she had previously purchased from him. Later, she changed her story and pointed to Landis as the seller. These inconsistent statements show that Melroy lied to police officers during her interrogation and would have been very important in assessing her credibility. As the trial court noted in its written decision, "[c]onflicting statements made by an informant about the source of drugs clearly bear on the credibility of that informant, and should be disclosed to a magistrate in the search warrant affidavit."

Nevertheless, the trial court found that the magistrate judge would have issued the search warrant even if he would have been made aware of Melroy's inconsistent statements:

"In the opinion of this court, had Judge Anderson known about the omitted statements made by Janet Melroy, he still would have issued the search warrant for the Landis residence in Canton. The initial statements made by Miss Melroy were contradictory even among themselves. She apparently told Trooper Patrick that this was the first time she had ever bought marijuana, but immediately followed this by saying that she had actually purchased from him several different times. Compared to a later very specific statement, she made concerning the time, manner of purchase and location of the Landis transaction, her earlier statements were obviously vague and confusing. I believe that even had Judge Anderson known about the various statements concerning 'John' and Wichita, under the totality of the circumstances, he would have been more inclined to rely on the detailed specific information given ultimately by Melroy about her dealings with Landis."

The reasoning of the trial court can be reconstructed into the following categorical syllogism:

Major Premise: All people who initially lie about their participation in a criminal activity, but later give specific details about their participation in the criminal activity are likely telling the truth about what they later say about the criminal activity.

Minor Premise: A initially lied about her participation in a crime, but later gave specific details about her participation in the crime.

Conclusion: Therefore, what A later said about the specific details of the crime are likely trustworthy.

This is a logical non sequitur to conclude from the premise that because a person gives specific details about his or her participation in a crime after having lied about his or her participation in the crime that therefore what that person says about the specific details of the crime is trustworthy. Such a conclusion does not really follow from the premises by which it is supposed to be supported. The fact that specific details follow sketchy details and contradictory statements is no guarantee that what a person says about the specific details of a crime is trustworthy. The person may have had time to think up a better story that was just as dishonest as the earlier version.

As discussed above, no information in the affidavit supported Melroy's veracity, other than police corroboration of the location of Landis' residence. The information deliberately omitted from the affidavit indicated that Melroy was not a reliable informant as she had made dishonest statements to police officers. Without other information establishing Melroy's credibility or an independent police investigation verifying the reliability of Melroy's statements, there was not probable cause to issue the search warrant. We determine that had the judge been made aware of the omitted information, "the combined bits and pieces of information would have failed to establish that probable cause existed under the totality of the circumstances. See *State v. Shively*, 26 Kan. App. 2d 302, 306, 987 P.2d 1119 (1999), *aff'd* 268 Kan. 589, 999 P.2d 259 (2000)." *Hendricks*, 31 Kan. App. 2d at 144.

*United States v. Leon*

In its brief, the State makes no argument regarding application of the good faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984). Therefore, it appears that the State has waived any argument under *Leon*. See *Hicks*, 282 Kan. at 617-18 (where State failed to pursue argument under *Leon*, our Supreme Court regarded argument as waived).

Nevertheless, even if this court were to consider the *Leon* good faith exception to the exclusionary rule, it appears that the motion to suppress still should have been granted. Under the *Leon* good faith exception, evidence should not be excluded unless it is shown:

" '(1) that the judge or magistrate who issued the warrant was deliberately misled by false information; (2) that the judge or magistrate wholly abandoned his or her neutral and detached role; (3) that the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; or (4) that there was so little indicia of probable cause contained in the warrant that it was entirely unreasonable for an officer to believe the warrant valid. [Citation omitted.]' " *State v. Probst*, 247 Kan. 196, 204, 795 P.2d 393 (1990).

"[T]he stated purpose of the exclusionary rule is to deter police misconduct. *Leon*, 468 U.S. at 916." *State v. Hendricks*, 31 Kan. App. 2d 138, 145, 61 P.3d 722 (2003).

Here, pertinent information was deliberately withheld from the affidavit by Detective Hawkinson. " '[A] deliberate omission is often equal to an actual misstatement' in determining whether a magistrate may have been misled by false information." *Hendricks*, 31 Kan. App. 2d at 145. The record in this case indicates that Hawkinson acted in bad faith by deliberately omitting material information and misleading the court in his affidavit for the search warrant. As a result, the *Leon* good faith exception is inapplicable, and the evidence should have been suppressed.

*Other Issues Raised by Landis*

In addition, Landis raises the following two arguments in his brief: (1) that he should be granted a new trial because the State failed to disclose an agreement of leniency with one of its witnesses;

(2) that the trial court abused its discretion in admitting his prior convictions under K.S.A. 65-4151; and (3) that cumulative error denied him a fair trial. Because we have reversed Landis' convictions and remanded the case with directions for the trial court to suppress the evidence obtained during the search, it is unnecessary for this court to address Landis' remaining arguments.

Reversed and remanded with directions to suppress the evidence obtained during the search of Landis' residence.