NOT DESIGNATED FOR PUBLICATION

No. 113,710

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTONIO RAFAEL BAKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed May 20, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Darrell Smith* and *Laura L. Miser*, assistant county attorneys, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BUSER and BRUNS, JJ.

*Per Curiam*: Antonio Rafael Baker appeals his convictions of possession of methamphetamine and possession of drug paraphernalia. Baker claims: (1) the district court erred in denying his motion to suppress evidence seized as a result of a search warrant because the search warrant was not signed by the judge until after law enforcement executed it; (2) the district court erred in denying his motion to suppress because the affidavit in support of the warrant was insufficient to issue a valid search warrant; and (3) the district court erred in failing to give a unanimity instruction to the jury. For the reasons set forth herein, we affirm the district court's judgment.

1

On July 18, 2014, Lyon County Sheriff Deputy Heath A. Samuels filed an affidavit for a search warrant for a residence located on South Walnut Street in Emporia, Kansas. In support of the warrant, Samuels stated that earlier that day at approximately 2:30 p.m. he stopped Joseph Berry for failing to properly use a turn signal. Samuels determined that Joseph had a restricted Kansas driver's license that required him to use an interlock device, which he did not have in his vehicle. Because Joseph did not want to go to jail, he agreed to give Samuels recent drug information. Joseph told Samuels that he was at a residence on South Walnut Street in Emporia at 11 p.m. the previous day, July 17, 2014. According to Joseph, the house belonged to Valeria A. Berry, and Baker was staying at the residence. Samuels stated in the affidavit: "I know Antonio Baker to be a local person of interest in the sale/and distribution of illegal drugs." The affidavit further stated that on July 17, 2014:

> "Joseph was in the garage/shed behind the residence with Antonio and Valeria. Valeria and Antonio were smoking methamphetamine out of a long glass smoking pipe. Joseph believes the pipe to be approximately 6 inches long. Valeria showed Joseph a bag of what she said and he believed to be methamphetamine. Joseph believes there to be approximately 2 '8-balls' in the bag. I know from my training and experience that an 8-ball is approximately 3.2 grams. Joseph also knows there is a pink multi colored book containing all the names and phone numbers that Valeria sells drugs to. Joseph also observed approximately $300.00 in U.S. Currency that he knows was collected during the distribution of illegal drugs. Joseph knows the drugs and paraphernalia are located inside a blue neon case inside of a larger steel box in the garage. Joseph left the house at approximately 2330 hours.
> "I know that Valeria has been arrested for possession illegal drugs before. I also know that Antonio Baker has been arrested multiple times in Lyon County for possessing illegal drugs."

Samuels stated in the affidavit that he knew Joseph "to be true and accurate in his information and that he has been used as a cooperating individual in the past." Samuels indicated that he had contacted Assistant Police Chief Ed Owens, who previously had

2

used Joseph as a cooperating individual. In that instance, Joseph provided information that matched another informant's information, which then led to that informant making a purchase, resulting in several arrests. The affidavit also stated: "Deputy Doudican has known Joseph for several years and on several occasions has used information that has been given to him by Joseph to make arrest [*sic*] and locate illegal drugs."

Samuels signed the search warrant affidavit before Chief Judge Merlin H. Wheeler on July 18, 2014. There is no specific time listed on the affidavit as to when it was subscribed and sworn before Judge Wheeler. The next page is a return, which states that Samuels received the warrant on July 18, 2014, and executed it at "1645 o'clock" that same day by seizing items listed on an attached page from the residence specified in the warrant. The search warrant itself is not included in the record on appeal.

According to later testimony, four officers executed the search warrant. As they approached the backdoor, a woman later identified as Valeria stepped out from the shed that was behind the house. When Samuels entered the shed, he encountered Baker and another male. Samuels knew Baker and later identified the other individual as Junior Barrera-Monroy. When the officers searched the shed, they found baggies, a drug ledger, a glass mirror with drug residue, a plastic bottle modified for smoking drugs, a glass smoking device, a plastic baggie of white crystal substance that tested positive for methamphetamine, and $245 in U.S. currency. The officers arrested Valeria, Baker, and Barrera-Monroy. Valeria told the officers that she had purchased the methamphetamine and that Baker was there helping her distribute it. Valeria claimed that Baker would contact people to come over to the residence, and she would sell them the drugs.

On July 22, 2014, the State charged Baker with one count of possession of methamphetamine with intent to distribute and one count of possession of drug paraphernalia. The State later amended the complaint to charge Baker with one count of

3

possession of methamphetamine with intent to distribute within 1000 feet of a school and one count of possession of drug paraphernalia.

On September 25, 2014, Baker filed a motion to suppress the evidence, arguing that the search was illegal because the officers executed the search warrant before the judge signed the warrant. The next day, Baker filed a second motion to suppress, arguing that the affidavit in support of the search warrant was insufficient because it contained a deliberate falsehood and because law enforcement failed to corroborate the informant's statements on which the warrant was based. Along with this motion, Baker filed an affidavit, in which he stated that he had never been arrested in Lyon County or any other county for possessing illegal drugs. The State responded to the motions on October 28, 2014, asking the district court to deny the motions and asserting that Baker failed to meet the substantial preliminary showing that a false statement was included in the affidavit.

On January 16, 2015, the district court held a hearing on the suppression motions. Judge W. Lee Fowler presided over the hearing. Defense counsel argued that the search warrant affidavit failed to comply with the requirements of *State v. Landis*, 37 Kan. App. 2d 409, 156 P.3d 675, *rev. denied* 284 Kan. 949 (2007), because law enforcement failed to corroborate the informant's statements on which the warrant was based. By agreement of the parties, the search warrant affidavit was admitted into evidence. The parties also agreed that Baker was challenging as false Samuel's statement:  "I also know that Antonio Baker has been arrested multiple times in Lyon County for possessing illegal drugs." The State argued, however, that even if this statement was incorrect and removed from the affidavit, there was still sufficient probable cause to support the search warrant.

After hearing argument of counsel, the district court first addressed Baker's argument that the affidavit in support of the search warrant was insufficient because it contained a deliberate false statement about Baker's prior arrests. The district court agreed with the State that even if the statement was incorrect and removed from the

4

affidavit, there was still sufficient probable cause to support the search warrant. Specifically, the judge stated:

> "Counsel, first of all, the Court is of the opinion that if we strike the language that Mr. Baker's been arrested multiple times in Lyon County for possessing illegal drugs because of the position of the State, and that apparently is not correct, the affidavit, itself, certainly has more than enough probable cause to still get into the residence based upon the statements of Mr. Berry."

Next, the district court rejected Baker's argument that the warrant was insufficient because the information provided by the informant, Joseph, was not credible. Specifically, the judge stated:

> "In this case the police [did] have [a] reasonable belief that [Joseph] could be a credible source because of their prior involvement with the particular informant. So, therefore, I find that *Landis* has been satisfied and the search warrant should not be suppressed because it does comply with the law."

After the district court's ruling, defense counsel stated that Baker was willing to wait and have the court rule at trial on his other motion regarding the timing of the judge's signature with the execution of the warrant. On January 29, 2015, the district court filed a journal entry of its previous ruling on Baker's motion to suppress. The district court stated that it decided Baker's motion as a matter of law based solely on the affidavit in support of the search warrant. The district court determined that there was probable cause in the warrant affidavit under the standards set out in *Landis*, 37 Kan. App. 2d at 409. The district court found that law enforcement had a history with Joseph Berry and that the officers found him to be reliable in the past. The district court concluded that because the officers had information about the informant's veracity and reliability, the evidence found pursuant to the warrant did not need to be suppressed.

5

On February 2, 2015, the district court held a 1-day jury trial with Judge Fowler presiding. Valeria testified on behalf of the State that on July 18, 2014, she, Baker, and Barrera-Monroy were in the shed at her residence when the police arrived and found them with methamphetamine. Valeria testified that she was the one who had purchased the methamphetamine, but they all knew it was there. In fact, she had invited Baker and Barrera-Monroy over to use the methamphetamine. Valeria stated that she was under the influence of methamphetamine when she spoke to officers on July 18, 2014. According to Valeria, the money and drugs that were found during the search were all in her purse. The ledger that the officers found was hers as well. Valeria testified that as a result of the search of the residence, she was convicted of distributing methamphetamine, but she stated that no one assisted her in distributing it. Valeria also testified that she received a plea bargain in exchange for her agreeing to testify truthfully in Baker's case.

Samuels testified next. He stated that Valeria admitted to selling drugs. According to Samuels, Valeria told him that Baker contacted people to come over and that she actually sold them the drugs. Samuels acknowledged that he found no physical evidence of drug use or sale on Baker's person. He testified that although Valeria was somewhat jittery for the circumstances, she did not appear to be high when he spoke with her on July 18, 2014. Samuels further testified about where the items of contraband were located in the shed. One of the plastic baggies of methamphetamine was contained within "a blue-colored wallet," which was sitting on a TV stand or desk in the shed. The wallet was out in the open and approximately 3 feet from Baker when the officers entered the shed. Samuels believed that the $245 was also located in this blue wallet. On cross-examination, Samuels testified that the wallet was glittery and more like a woman's wallet. However, he testified that the wallet was "clear"—you could see the drugs inside of it even when it was closed.

Dominick Vortherms, a narcotics investigator with the Emporia Police Department, testified that he was involved in the execution of the search warrant at the

residence on South Walnut Street. He spoke to Valeria, and she told him that she had purchased the methamphetamine from an unknown person the previous day and that she and Baker had sold part of it already and were planning to sell the rest. Vortherms also testified that he did not believe that Valeria was under the influence of methamphetamine when he talked with her after they executed the search warrant. Significant to the motion to suppress, Vortherms initially testified that he arrived on the scene at approximately 3:57 p.m., and it took them about 40-45 minutes to search the shed. He later clarified that he and another officer arrived at 3:57 p.m. and waited in an alley until they actually executed the search warrant at approximately 4:30 p.m.

Beth Royel, a forensic scientist from the Kansas Bureau of Investigation, testified that her office conducted tests on the evidence seized as a result of the search warrant. Royel testified that the tests revealed that the substance the officers found in the shed was methamphetamine and that residue from paraphernalia items found in the shed also contained methamphetamine.

Lisa Main, an employee of USD 253, testified regarding whether the school near the residence on South Walnut Street was in session on July 18, 2014. Linda Borst, an employee of the mapping department of the Lyon County Appraiser's Office testified about the distance between the residence on South Walnut Street and the school.

After the State rested, Baker renewed his motions to suppress, including the argument on which the district court had yet to rule—that the judge signed the warrant after the officers executed it. He also moved for judgment of acquittal. The district court denied the motion for judgment of acquittal and denied Baker's motion to suppress because it found that the search warrant was valid. The district court found that the time at which the judge signed the warrant did not matter as much as whether the warrant was actually signed. The district judge mentioned that he had dealt with the same issue when the warrant was challenged in Valeria's case, and he believed that Judge Wheeler had just

put the wrong time down when he signed the warrant. In a later-filed journal entry, the district court stated that it denied the motion because the judge who issued the search warrant put the wrong time on the warrant, which was not a fatal defect.

Baker did not present evidence. The parties discussed the jury instructions outside of the presence of the jury, and Baker did not request a unanimity instruction or object to the lack of one. The jury found Baker guilty of the lesser included offense of possession of less than 1 gram of methamphetamine and guilty of possession of drug paraphernalia.

On March 26, 2015, the district court sentenced Baker to 30 months' imprisonment but granted probation for 18 months. Baker timely appealed his convictions.

MOTION TO SUPPRESS

Baker argues that the district court erred in denying his motion to suppress evidence obtained during the search pursuant to the search warrant. He first argues that the search was not conducted based on a valid search warrant because the judge did not sign the warrant until after the officers conducted the search. Second, he argues that the affidavit in support of the warrant was insufficient to issue a valid search warrant.

Appellate courts review a district court's decision on a motion to suppress by first determining whether substantial competent evidence supports the district court's factual findings without reweighing the evidence or assessing the credibility of witnesses. Second, appellate courts apply an unlimited standard of review to the ultimate legal conclusions drawn by the district court from those factual findings. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012).

*Timing of the execution of the search warrant*

Baker first argues that the search was not conducted based on a valid search warrant because the judge did not sign the warrant until after the officers conducted the search. Baker argues that the search warrant was signed by Judge Wheeler at 4:29 p.m. on July 18, 2014. Baker then points to the official reports of Officer Vortherms and Officer Damien Podrebarac, which indicate that they arrived at the residence to execute the search warrant at 3:57 p.m. Vortherms also initially testified at trial that he arrived to serve the search warrant at 3:57 p.m. Based on these statements, Baker concludes that the judge did not sign the warrant until after the officers conducted the search.

There are problems with Baker's argument. First and foremost, there is absolutely no evidence in the record establishing that Judge Wheeler signed the search warrant at 4:29 p.m. on July 18, 2014. Baker's motion to suppress filed on September 25, 2014, alleged that Judge Wheeler signed the search warrant at 4:29 p.m. However, the parties presented no evidence to establish this claim, and the search warrant itself is not included in the record on appeal. As a general rule, the party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. *State v. Bridges*, 297 Kan. 989, 1001, 306 P.3d 244 (2013).

In denying Baker's motion to suppress based on this issue, the district court found that Judge Wheeler put the wrong time down when he signed the warrant, which was not a fatal defect. However, there is nothing in the record to support this finding. Judge Fowler mentioned that he had dealt with the same issue when the warrant was challenged in Valeria's case, but he cited to no evidence in Baker's case to support a finding that Judge Wheeler wrote down the wrong time.

On appeal, the State argues that Judge Fowler "made a specific finding that the officer's [*sic*] were in possession of the signed search warrant when they served it at the

9

residence [and] [t]hat finding is supported by substantial competent evidence in the record." We disagree with this assertion. In denying the motion to suppress at the jury trial, Judge Fowler stated at one point that the officers testified "they went to the residence to serve the search warrant, which indicates they had the search warrant . . . ." We do not interpret this statement as a specific finding that the officers were "in possession of" the signed warrant when they conducted the search. In any case, such a particular finding would not have been supported by the evidence.

However, even if this court presumes the warrant was signed by Judge Wheeler at 4:29 p.m., and even without evidence that the officers were "in possession of" the signed warrant when they conducted the search, there is still evidence in the record to support the district court's conclusion that the search warrant was signed before it was executed by the officers. Vortherms initially testified that he arrived on the scene at approximately 3:57 p.m. He later clarified that he and another officer arrived at 3:57 p.m. and waited in an alley for approximately 30 minutes before joining other officers to execute the search warrant. Upon being asked what time the search warrant was executed, Vortherms testified, "I think it was about 4:30 p.m." The return on the search warrant, which is included in the record on appeal, indicates that the warrant was executed at "1645 o'clock" on July 18, 2014. In the absence of any contrary evidence presented by Baker, the record is sufficient to support the district court's conclusion that the search warrant was signed by Judge Wheeler before it was executed by the officers. Thus, we conclude the district court did not err in denying the motion to suppress based on this ground.

*Insufficiency of the search warrant affidavit*

Baker also argues that the affidavit in support of the warrant was insufficient to issue a valid search warrant. Specifically, Baker argues that the affidavit contained a false statement and he further argues that the police did not corroborate any of the information the informant provided to establish probable cause.

10

A search warrant shall be issued only when a statement in support of that warrant alleges "facts sufficient to show probable cause that a crime has been or is being committed" and "particularly describes a person, place or means of conveyance to be searched and things to be seized." K.S.A. 2015 Supp. 22-2502(a). Therefore,

> "'[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the "veracity" and "basis of knowledge" of any person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in particular place.' [Citation omitted.]" *State v. Fisher*, 283 Kan. 272, 300, 154 P.3d 455 (2007).

When the affidavit supporting an application for a search warrant is challenged, this court applies a deferential standard that asks not whether probable cause existed as a matter of law but "'whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched.'" *State v. Adams*, 294 Kan. 171, 180, 273 P.3d 718 (2012). This court "'may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" 294 Kan. at 180. Moreover, this determination "must be based upon whether the four corners of the affidavit support probable cause for issuance of the search warrant." *State v. Bowles*, 28 Kan. App. 2d 488, 492, 18 P.3d 250 (2001).

An affidavit in support of a search warrant is presumed valid. An evidentiary hearing is required if the defendant shows by a sworn allegation that an affidavit in support of a search warrant is unreliable because it: (1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements (a) were a deliberate falsehood, (b) were made in reckless disregard for the truth, or (c) deliberately omitted a material fact. *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

11

Moreover, when the information relied on for the application for a search warrant is received from an unquestionably honest citizen, it is entitled to a presumption of reliability. See *Landis*, 37 Kan. App. 2d at 418-19. This presumption, however, is inapplicable when the informant is implicated in a crime and hopes to gain leniency by giving up information. 37 Kan. App. 2d at 419. When an informant hopes to gain leniency, the affidavit must establish the informant's credibility or police officers must corroborate the informant's statements. 37 Kan. App. 2d at 419.

Baker first challenges the following statement in Samuels' affidavit: "I also know that Antonio Baker has been arrested multiple times in Lyon County for possessing illegal drugs." Baker filed an affidavit in district court in which he stated that he had never been arrested in Lyon County or any other county for possessing illegal drugs. Rather than disputing the veracity of Baker's statement, the State argued in district court that the remaining information in the affidavit provided probable cause to support the search warrant. The district court agreed and found that "the Court is of the opinion that if we strike the language that Mr. Baker's been arrested multiple times in Lyon County for possessing illegal drugs . . . the affidavit, itself, certainly has more than enough probable cause to still get into the residence based upon the statements of Mr. Berry."

We agree with the district court's legal conclusion that Samuels' affidavit was sufficient to establish probable cause even if we strike the allegedly false statement that Baker had been arrested multiple times in Lyon County for possessing illegal drugs. The affidavit states that on July 18, 2014, Samuels stopped Joseph Berry for failing to properly use a turn signal. Joseph told Samuels that he was at the residence on South Walnut Street at 11 p.m. the previous day, July 17, 2014. According to Joseph, the house belonged to Valeria and Baker was staying at the residence. Samuels stated in the affidavit that he knew Baker to be a local person of interest in the sale and distribution of illegal drugs. The affidavit further stated that on July 17, 2014, Joseph was in the shed behind the residence with Valeria and Baker, who were smoking methamphetamine out

12

of a long glass pipe. Valeria showed Joseph a bag which he believed contained two "8-balls" of methamphetamine. Samuels knew from his training and experience that an 8-ball is approximately 3.2 grams. The affidavit stated that there was a pink multi-colored book in the shed containing the names and phone numbers of customers who purchased drugs from Valeria. Joseph also observed approximately $300 in U.S. currency that he knew was collected during the distribution of illegal drugs.

The question is not whether the affidavit established probable cause that Baker was involved in the distribution of illegal drugs; rather, the question is whether the affidavit established a fair probability that contraband or evidence of a crime would be found in the shed. We conclude that, subject to Baker's argument that law enforcement failed to corroborate the informant's statements, Samuels' affidavit established probable cause to search the residence and the shed even without the allegedly false statement that Baker had been arrested multiple times in Lyon County for possessing illegal drugs.

This leaves us with Baker's argument that the search warrant affidavit was insufficient because law enforcement failed to corroborate the information provided by Joseph. Relying on *Landis*, Baker argues that because Joseph provided information to Samuels in order to stay out of jail, the affidavit was insufficient because Samuels failed to corroborate Joseph's statements. Baker is only partly correct. When an informant hopes to gain leniency by giving up information to law enforcement to support a search warrant affidavit, the affidavit must establish the informant's credibility *or* police officers must corroborate the informant's statements. See *Landis*, 37 Kan. App. 2d at 419.

Here, Samuels did not corroborate Joseph's statements. However, the affidavit includes sufficient evidence establishing Joseph's credibility. Samuels stated in the affidavit that he knew Joseph "to be true and accurate in his information and that he has been used as a cooperating individual in the past." Samuels further indicated in the affidavit that he had contacted Assistant Police Chief Owens, who previously had used

13

Joseph as a cooperating individual. In that instance, Joseph provided information that matched another informant's information, which then led to that informant making a purchase, resulting in several arrests. The affidavit also stated: "Deputy Doudican has known Joseph for several years and on several occasions has used information that has been given to him by Joseph to make arrest [*sic*] and locate illegal drugs."

Baker does not challenge the sufficiency of the information supporting Joseph's veracity; he only argues that the affidavit was insufficient because officers failed to corroborate any of the information. But because the affidavit contained sufficient information establishing Joseph's credibility, we reject Baker's argument that the affidavit was insufficient merely because Joseph was providing information to obtain leniency. For all these reasons, we conclude that the district court did not err in denying Baker's motions to suppress the evidence.

UNANIMITY INSTRUCTION

Finally, Baker argues that his statutory right to a unanimous jury verdict was violated because the State presented evidence of multiple acts of possession of methamphetamine and paraphernalia but the district court did not instruct the jury that it had to be unanimous as to which act constituted the crimes. The State argues that this is not a multiple acts case; thus, a jury instruction on unanimity was not required.

Analyzing a multiple acts case requires a three-part examination. *State v. King*, 297 Kan. 955, 978-84, 305 P.3d 641 (2013). First, this court must determine whether the case even involves multiple acts, which is a question of law over which the appellate court exercises unlimited review. *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). If the court decides that multiple acts were involved, the next question is whether error was committed because either the district court failed to instruct the jury to agree on the specific act for each charge or the State failed to inform the jury which act to rely

14

upon during its deliberations. Finally, if error was committed, this court must determine whether the error was harmless. 299 Kan. at 18. The test for harmlessness when a unanimity instruction was not requested or its absence not objected to is the clearly erroneous standard articulated in K.S.A. 22-3414(3). *State v. Voyles*, 284 Kan. 239, 252-53, 160 P.3d 794 (2007). To establish clear error, an appellate court must be firmly convinced that under the facts the jury would have returned a different verdict if the unanimity instruction had been given. *Santos-Vega*, 299 Kan. at 18.

Baker contends that the jury could have found him guilty of possession of methamphetamine based on either one of the two baggies containing methamphetamine in the shed, the mirror with methamphetamine residue on it, or the glass pipe with methamphetamine residue on it. As for his conviction for possession of paraphernalia, he argues that the jury could have found him guilty based on the mirror, the glass pipe, the plastic bottle that law enforcement testified was used as a bong, or the plastic bags that were alleged to be methamphetamine packaging.

Baker's case is similar to the facts presented in *State v. Unruh*, 281 Kan. 520, 529, 133 P.3d 35 (2006). In that case, the defendant was driving a van with his brother and his brother's friend as passengers when the van was stopped by police. Because the van was reported as stolen, all three occupants were arrested, and the vehicle was impounded. During an inventory search of the van, detectives found in a coat in the backseat a loaded handgun with an extra magazine, a marijuana pipe, a baggie of methamphetamine, and a pill bottle with the defendant's name on it. In the passenger compartment, detectives found a billfold with wax paper in it containing methamphetamine, a syringe, and some marijuana. In between the seats, detectives found a marijuana cigarette, a film canister containing marijuana inside a bag of money, and a bag of syringes. In the very back of the van, separated by a cloth between the seats, detectives found three baggies of marijuana, finished methamphetamine, and numerous items associated with two different methods of manufacturing methamphetamine.

The defendant was convicted of seven charges, including one count of possession of methamphetamine. The defendant had not requested a unanimity instruction, but he argued on appeal that there were several factually distinct acts upon which the jury could have relied to convict him of the possession of methamphetamine charge: methamphetamine in (1) his coat pocket; (2) his billfold; (3) a small baggie in an ammunition box in the back of the van; and (4) a large baggie in the same ammunition box. He argued that the case involved multiple acts because the jury could have believed his testimony that he did not know about the drugs in the back of the van but disbelieved his testimony that he did not know about the drugs in his coat pocket.

The Kansas Supreme Court rejected the defendant's argument and found that the case did not involve multiple acts, but multiple items of evidence. All the evidence was located in the van that the defendant was driving. "[T]here was no temporal, geographic, or other separation or severance of the acts," and the defendant had a common defense to the charges—that he did not know about any of the methamphetamine and that it did not belong to him. Consequently, the Supreme Court determined that there was no need for the State to specify which particular methamphetamine it was relying upon, and the district court did not need to give a unanimity instruction. 281 Kan. at 527-29.

Here, all of the evidence relied on to convict Baker was found in the small shed where he was located when the officers arrived at the scene. Although the return on the warrant shows that other items were located in the main part of the house, none of those items were used to convict Baker. Just as the Supreme Court found in *Unruh*, there was no temporal, geographic, or other separation or severance of the acts of possession of methamphetamine or paraphernalia used to convict Baker. We conclude this was not a multiple acts case, and there was no need for the court to give a unanimity instruction.

Affirmed.

16